Charles E. STUDEN et al.,
Plaintiffs-Appellants,

v.

Robert S. BEEBE et al.,
Defendants-Appellees.

No. 77-3173.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 13, 1978.

Decided Dec. 11, 1978.

Dale H. Markowitz, Thrasher, Dinsmore & Dolan, Lawrence J. Dolan, Chardon, Ohio, for plaintiffs-appellants.

Guerin L. Avery, Cleveland, Ohio, for defendants-appellees.

Before PHILLIPS, Chief Judge, and CELEBREZZE and KEITH, Circuit Judges.

PHILLIPS, Chief Judge.

This appeal involves yet another effort to make a federal case out of litigation which belongs in the State courts. *Ohio Inns v. Nye,* 542 F.2d 673, 676 (6th Cir. 1976), *cert. denied,* 430 U.S. 946, 97 S.Ct. 1583, 51 L.Ed.2d 794 (1977).

Appellants Charles F. Studen, his wife Berta Studen, and their wholly owned corporation, Donray Products Company, filed this action alleging denial of their civil rights in violation of 42 U.S.C. §§ 1983 and 1985. The complaint alleges that appellees, present or former officials of Mayfield Village, Ohio, conspired to deprive plaintiffs-appellants of equal protection of the laws and denied them due process and equal protection. Appellants assert their constitutional rights were violated by: (1) the enactment of Mayfield Ordinance No. 72–2, which rezoned substantial acreage within the Village, including the property of appellants, from three tiered zoning to single family residential use; and (2) the failure of the Village to grant a 1973 building permit requested by Donray Products for expansion of existing production and distribution facilities on the property in question.

The district court dismissed the complaint, *sua sponte,* holding there was no federal jurisdiction. On appeal this court vacated the judgment of dismissal and remanded the action in the following order:

On receipt and consideration of the briefs and records in the above-styled case; and

Noting that plaintiffs' complaint alleges in part:

32. (c) By reason of this 1973 Zoning amendment, the defendants have rezoned an open area, existing between the industrial use and Interstate Highway 271, at a place where no public sewer or water is available, and at a place where the ground water supply has been seriously questioned, and at a place where the texture of the soil is such that any disposal systems would be considered unlikely, thus rendering plaintiffs' property, not only useless for its present use but useless for the purpose of the intended ordinance.

(d) The Zoning ordinance as applies to the subject property has the effect of, and has in fact, constituted a taking of the plaintiffs' property, rights and privileges without due process of law and has in fact denied plaintiff equal protection of the law.

And further believing that these allegations (as well as others alleging a conspiracy to deprive plaintiffs of equal protection of the laws) do serve to assert a claim of federal constitutional deprivation which we are required to accept at face value, since this case was dismissed *sua sponte* without answer or hearing; and

Further being unable to perceive any basis for abstention, either under the *Pullman* doctrine (*Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Harman v. Forssenius,* 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); *Lake Carriers' Assn. v. MacMullan,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972)), or the *Alabama Power* doctrine (*Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Alabama Public Service Commission v. Southern Ry.,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951));

The judgment of the District Court is vacated and the case is remanded to the District Court for further proceedings.

After a trial on the merits, Senior District Judge Ben C. Green entered detailed findings of fact and conclusions of law and again dismissed the action on the ground that plaintiffs had failed to demonstrate any deprivation of federally protected civil rights.

We affirm.

I

In 1935, Mayfield Village promulgated a comprehensive zoning plan by Ordinance No. 159. The 7.8 acre parcel of land which is the subject of this appeal, and contiguous land totaling some 350 acres, were zoned initially for single family residential use only.

The zoning plan was amended in 1962 by Mayfield Village Ordinance Nos. 763 and 764, which created a three tiered zoning plan providing for residential, office-laboratory (hereinafter commercial) and production-distribution (hereinafter industrial) districts.

In 1967, appellants purchased 7.8 acres of land which was subject to the three tier zoning. The first 350 feet depth of this property was zoned for residential use and the balance for commercial use, except for a small triangular portion located in the northeast corner which was zoned for industrial use. Appellants acquired the land with the intention of converting an existing structure located thereon into a manufacturing plant.

The district court found that Village officials, in the course of reviewing appellants' application for a building permit, examined a surveyor's drawing of the property which had been prepared by the previous owner. That document erroneously depicted the existing building as being bisected by the zoning demarcation line separating commercial and industrial districts.

Pursuant to appellants' application, a building permit was issued, but under a mistake of fact. Contrary to the surveyor's drawing, the building was located entirely within the commercial district. Under the provisions of the 1962 zoning ordinances, the building could not be used for industrial purposes. It is unclear where the fault lay for this surveying error. Village officials say they relied on the survey furnished by appellants. Appellants assert that both their survey and a Village survey were referred to in ascertaining the location of the building.

The facts concerning the correct location of appellants' building were not discovered by Village officials until 1973 and were not disclosed to appellants until 1976. In the meantime, appellants had remodeled the building and, in 1970, commenced fabrication of plastic foam products on the premises.

In 1971, the Village zoning plan again was amended by Ordinance No. 72–2. Approximately 200 acres, including the 7.8 acres owned by appellants, were rezoned to their 1935 residential status. Appellants contend the 1971 ordinance was politically motivated and enacted as a result of anti-industrial animus on the part of Village officials.

Commencing in March 1973, appellants made a series of contacts with the Village Planning and Zoning Commission in an effort to obtain a permit to expand the Donray plant. The minutes of the Commission meeting, held May 14, 1973, indicate that appellants' representatives were informed of certain deficiencies in their proposed expansion plans and were specifically told by the Village Solicitor that a zoning variance would be necessary before the proposed addition could be permitted. Appellants advised Village officials that approval of an expansion plan had already been granted by the Village in 1967, when the initial remodeling permit was issued.

Appellants were invited to attend the July 9, 1973, meeting of the Planning and Zoning Commission and to bring with them any documentation which would support this representation. After hearing evidence, the Commission took the matter under advisement and thereafter referred the questions to the Village Solicitor for determination. Subsequently, there appears to have been a breakdown in communication between the parties. The district court found as follows:

It does not appear that the Village Solicitor had any further communications with plaintiffs or their counsel on the subject of Donray Products' right to expand.

On August 31, 1973 plaintiffs' attorney sent a letter to defendant Bordonaro, Secretary of the Planning and Zoning Commission, which requested the village to either grant plaintiffs a permit for a nonconforming use or deny the request and state the reasons for the denial. That letter further stated that should no response be received by September 15, 1973 plaintiffs would "assume that no permit will be granted," and would "take

whatever action we deem appropriate." The village took no action in response to the letter of August 31, 1973 and on November 1, 1973 plaintiffs filed the instant lawsuit.

## II

We consider first appellants' claim under § 1985. In *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971), the Supreme Court defined the elements of a claim under § 1985(3) as follows:

> To come within the legislation a complaint must allege that the defendants did (1) "conspire . . ." (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

In the same opinion, the Supreme Court said:

> The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all. (Footnotes omitted.) 403 U.S. at 102, 91 S.Ct. at 1798.

To like effect, *see Ohio Inns, supra,* 542 F.2d at 678–79; *Cameron v. Brock,* 473 F.2d 608, 610 (6th Cir. 1973); *Hopkins v. Wasson,* 329 F.2d 67 (6th Cir.), *cert. denied,* 379 U.S. 854, 85 S.Ct. 102, 13 L.Ed.2d 57 (1964).

We agree with the holding of the district court that there was a total failure of evidence on this issue. The record is devoid of any evidence suggesting the existence of a conspiracy, or any acts on the part of Village officials, directed at appellants because of their membership in a defined class. *See Ellentuck v. Klein,* 570 F.2d 414, 426 (2d Cir. 1978); *Atkins v. Lanning,* 556 F.2d 485, 489 (10th Cir. 1977); *Elmwood Properties, Inc. v. Conzelman,* 418 F.2d 1025, 1027–28 (7th Cir. 1969), *cert. denied,* 397 U.S. 1063, 90 S.Ct. 1498, 25 L.Ed.2d 684 (1970).

Ordinance No. 72–2 affected substantial acreage in addition to the tract owned by appellants. The rezoning had an impact on a number of property owners with diverse existing uses. Further, there is no evidence that denial of the building permit by Village officials was based on any factor other than location of the Donray plant in a non-industrial district.

The district court found as follows:

> In regard to plaintiffs' argument that Ordinance No. 72–2 was politically motivated, there is no question that defendants Beebe and Bordonaro campaigned for office on a platform which promoted the retention of the basically residential nature for Mayfield Village, and that the introduction of Ordinance No. 72–2 was consistent with that position. However, the Court finds that in passing Ordinance No. 72–2 the village officials were simply responsive to the desire of their constituency to maintain the basically residential character of the Village of Mayfield. The mood of the village with respect to industrial development in the period preceding this lawsuit is exemplified by the formation of the Mayfield Civic League, an association of citizens which was organized for the stated purpose of promoting and protecting the interests of homeowners within the village. A further indication of the desires of defendants' constituency is found in the fact that in 1967, by a two-thirds majority, an initiative and referendum was passed which vitiated Ordinance No. 7001, which had rezoned a large tract of land in the northwesterly section of the village from single-family residential to production-distribution use. Having taken the preceding factors into account it appears to

the Court that defendants in fulfilling their campaign promises were simply honoring the desires of the majority of village residents. The Court finds nothing unlawful in defendants keeping their campaign promises, provided that 72–2 was not specifically aimed at plaintiffs for the purpose of driving their business from the village.

With respect to the contention that Ordinance No. 72–2 was aimed at plaintiffs' operation, the Court finds a failure of proof on this issue. Numerous other landowners were affected by the enactment of Ordinance No. 72–2. While plaintiffs had the only functioning industrial use at the time 72–2 was enacted, in fact all landowners in the area subject to the rezoning were deprived of the right to use their property for any purpose other than single-family residence use.

\* \* \* \* \* \*

With respect to plaintiffs' conspiracy claim, the Court finds a complete lack of evidence to support the allegation of a conspiracy to deprive plaintiffs of equal protection of the laws in violation of 42 U.S.C. § 1985. Upon being questioned at trial as to what action had been taken by each of the named defendants in order to deprive him of his civil rights, Mr. Studen stated that he did not know. The record is virtually devoid of evidence of acts by defendants other than Bordonaro and Beebe relating to the enactment of 72–2 or the events pertaining to plaintiffs which transpired thereafter. Therefore, the Court must conclude that plaintiffs' theory of conspiracy was based on the fact that the named defendants other than Messrs. Bordonaro and Beebe held village offices, and that they may have voted in favor of the passage of Ordinance No. 72–2. Such conduct does not constitute evidence of an unlawful conspiracy.

### III

■ Appellants' § 1983 claim is grounded on the contention that they were denied due process and equal protection. In ruling on these contentions, the district court held:

In regard to plaintiffs' assertion that defendants' preference for residential development over industrial use in the enactment of Ordinance No. 72–2 constituted a denial of plaintiff's right to equal protection, the mere fact that the Mayfield zoning plan favored residential use does not make out a case for denial of equal protection of the laws. All zoning plans have inherent within them a discrimination between the various land uses permitted thereunder. Under the facts of this case there is no distinction in treatment between plaintiffs and any similarly situated property owners. Consequently, the classification to which plaintiffs have been subjected is that which permeates all zoning, and does not amount to a denial of equal protection.

Plaintiffs have attempted to mount an equal protection argument on the basis that at the time of the enactment of Ordinance No. 72–2 defendants knew that plaintiffs would be unable to develop their land for single-family residence use, and that such development could only be carried out in combination with other tracts. The Court finds this allegation not to be well supported by the record, in that evidence was presented at trial which indicated that single-family residential development might be feasible on plaintiffs' property, given proper planning. Furthermore, it appears to the Court that such considerations go to the question of whether the zoning is constitutionally impermissible under the standards of *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395 [47 S.Ct. 114, 71 L.Ed. 303] (1926) as being "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." The Supreme Court has recently indicated, as has been the generally accepted view, that such a conventional attack on the validity of zoning is a matter to be resolved in state court. *City of Eastlake v. Forest City Enterprises,* 426 U.S. 668 [676–677, 96 S.Ct. 2358, 2363–2364], 49 L.Ed.2d 132, 139 (1976).

We agree with the district court that appellants failed to establish a denial of equal protection. *See Village of Belle Terre v. Borass,* 416 U.S. 1, 5–8, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974); *Trustees of Mortgage Trust of America v. Holland,* 554 F.2d 237, 238 (5th Cir. 1977); *Construction Industry Association of Sonoma County v. City of Petaluma,* 522 F.2d 897, 905–07 (9th Cir. 1975), *cert. denied,* 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 342 (1976); *City of Highland Park v. Train,* 519 F.2d 681, 696–97 (7th Cir. 1975), *cert. denied,* 424 U.S. 927, 96 S.Ct. 1141, 47 L.Ed.2d 337 (1976).

■ Appellants complain that because they were not advised promptly by Village officials of the true location of their facility, they were denied due process. We agree with the district court:

> Plaintiffs, as owner of the subject property, are legally charged with knowing the true location of any structures thereon. The fact that both plaintiffs and . . . Village officials previously relied upon an inaccurate plat provided by a third party does not alter that fact.

Nor, in our opinion, does the delay amount to a denial of due process.

Appellants further assert they were deprived of procedural due process because Village officials acted without giving appellants benefit of notice, the right of cross-examination, or the right to offer rebutting evidence. This charge is without merit. Appellants have failed to establish a right to more procedural due process than has been accorded on the record in this case. *See, South Gwinnett Venture v. Pruitt,* 491 F.2d 5, 6–7 (5th Cir. en banc), *cert. denied,* 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974).

■ Section 1983 does not create a federal cause of action for every wrong committed under color of State law. *See Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), *reversing,* 505 F.2d 1180 (6th Cir. 1974) (no § 1983 action for police department flyer containing photographs of plaintiff as included among "active shoplifters."); *Morse v. Wozniak,* 565 F.2d 959 (6th Cir. 1977) (no § 1983 action for failure of school board to renew contract); *Burnett v. McNabb,* 565 F.2d 398 (6th Cir. 1977) (granting or denial of beer license not actionable under § 1983); *Ohio Inns, supra,* 542 F.2d 673 (no § 1983 relief for breach of contract and defamation); *Thacker v. Whitehead,* 548 F.2d 634 (6th Cir. 1977) (demotion of public employee not a § 1983 violation); *Lake Michigan College Federation of Teachers v. Lake Michigan Community College,* 518 F.2d 1091 (6th Cir. 1975) (discharge of striking teachers not violation of due process).

■ Litigants cannot create federal jurisdiction by filing an insubstantial action under the civil rights statutes. *Burnett, supra,* 565 F.2d at 400. Only deprivations of rights, privileges, or immunities secured by the Constitution and laws of the United States are actionable. *Ohio Inns, supra,* 542 F.2d at 679.

■ We agree with the district court that this zoning dispute is a matter within the jurisdiction of the State courts of Ohio. *City of Eastlake v. Forest City Enterprises,* 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976); *Hausmann & Johnson, Inc. v. Berea Bd. of Bldg. Code Appeals,* 40 Ohio App.2d 432, 435–36, 320 N.E.2d 685, 688 (1974); *12701 Shaker Blvd. Co. v. City of Cleveland,* 31 Ohio App.2d 199, 287 N.E.2d 814 (1972).

The record in the present case reveals no deprivation of any rights, privileges or immunities secured by the Constitution or any laws of the United States.

Affirmed.