**NORTHWOOD APARTMENTS,**
Plaintiff-Appellant,

v.

**Max LaVALLEY, Thomas Sommerville and City of Royal Oak,**
Defendants-Appellees.

No. 79–1536.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 5, 1981.
Decided May 14, 1981.

Thomas J. Beale, Hyman, Gurwin, Nachman, Friedman & Winkelman, Southfield, Mich., for plaintiff-appellant.

Milton Lucow, Rosalind Rochkind, Garan, Lucow, Miller, Lehman, Seward & Cooper, Detroit, Mich., Terrance H. Brennan, Daniel Sawicki, Royal Oak, Mich., for defendants-appellees.

Before MERRITT and BROWN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

BAILEY BROWN, Circuit Judge.

Northwood Apartments operates a 121 unit apartment building in the City of Royal Oak, Michigan. On July 27, 1978, Northwood filed a civil rights damage action under 42 U.S.C. §§ 1983 and 1985 and their jurisdictional counterpart, 28 U.S.C. § 1343, in the United States District Court for the Eastern District of Michigan. Northwood alleged that the City of Royal Oak, acting through the city assessor, Max La Valley, and the deputy assessor, Thomas Sommerville, as part of a conspiracy against Northwood, illegally increased Northwood's property assessment with the result that Northwood's taxes were increased by about 20 per cent in 1978. Northwood further alleges that the action was in retaliation for Northwood's appeal of the earlier assessments. Northwood contends that, in deliberately and maliciously reassessing the property at a higher value, defendants violated Northwood's constitutional rights to due process, free access to the courts, and equal protection. The district court, on defendants' motion, dismissed the complaint either for lack of subject matter jurisdiction or alternatively, on abstention grounds.[1] After a thorough review of the record in this case, we find neither ground to be a sufficient basis for the district court's grant of this motion. We therefore reverse the grant of the motion to dismiss for the reasons given below and remand for further proceedings consistent with this opinion.

I

Northwood Apartments is a Michigan co-partnership operating in the City of Royal Oak. In 1975, there was a citywide reassessment of apartment properties. Northwood believed that its 1975 assessment was too high and appealed the assessment to the Michigan Tax Tribunal.[2] While the appeal

1. As will be discussed later, the district court never made clear whether it was dismissing the action because of lack of subject matter jurisdiction or whether it was dismissing on abstention grounds.

2. The Michigan Tax Tribunal is a quasi-judicial entity, consisting of five appointed experts, which has "exclusive and original jurisdiction" of (1) appeals from any final decision, ruling, determination, or order of any agency relating to assessment, valuation, rates, special assess-

was still pending in 1976, Northwood appended its assessment for 1976, which had not changed from 1975, to the original appeal. In 1977, there was another citywide reassessment of apartment properties, and Northwood's assessment was again increased. Northwood appended the 1977 assessment to its pending appeal. In 1978, although no citywide reassessment of apartment properties was made, Northwood was reassessed and its taxes were increased by about 20 per cent. This assessment was also appended to the original appeal.

In May, 1978, the Michigan Tax Tribunal held a hearing on the petitions for reassessment. The Tribunal determined that Northwood made an insufficient showing of protest to the local board of review for the 1977 assessment, and therefore, the Tribunal had no jurisdiction to review the 1977 assessment. This action is not contested here. The assessments for 1975, 1976 and 1978 were taken under consideration.

In July, 1978, as stated, Northwood filed this action for damages alleging violations of 42 U.S.C. §§ 1983 and 1985(3), as well as pendent state law claims for abuse of process and malicious use of process. Northwood alleged that the City of Royal Oak, LaValley, and Sommerville[3] (hereinafter collectively referred to as defendants) intentionally and maliciously reassessed Northwood's property in 1978 to punish Northwood for appealing its earlier assessments and to deter Northwood from further prosecuting its appeal before the Michigan Tax Tribunal. The complaint further alleged:

> The only other apartment owner in the City of Royal Oak who was reassessed in

1978 was another property owner who, like the plaintiff, had appealed its prior years' valuations to the Michigan Tax Tribunal.

The original complaint sought a declaratory judgment and a permanent injunction as well as compensatory and punitive damages, attorney's fees and other costs. Further, Northwood sought class certification to represent persons who owned property in Royal Oak. Before the district court ruled on the motion to dismiss, Northwood withdrew its claim for declaratory and injunctive relief and for class certification.

In September, 1978, the Michigan Tax Tribunal reduced the assessment of Northwood's property for 1975 and for 1976 from $810,000 to $625,000. The 1978 assessment was reduced from $1,028,000 to $750,000.[4]

In July, 1979, defendants filed a motion to dismiss. In their briefs and at the hearing, defendants raised two arguments in support of their motion to dismiss. First, they asserted that there was no subject matter jurisdiction as the action was barred by the Tax Injunction Act, 28 U.S.C. § 1341. Second, they argued that even if the action was not barred by the Act, the same policies of federalism and comity which led to the passage of the Act should lead the court, in its discretion, to abstain from accepting jurisdiction. The district court indicated its ruling on the motion from the bench, stating:

> I do abstain because I think this would have, if I entertained jurisdiction in this case we are going to entertain jurisdiction in many cases where similar claims are made. There may be a good claim in some and maybe not in others I don't know.

ments, allocation, or equalization, under property tax laws, M.C.L.A. § 205.731(a); and (2) any direct "proceeding for refund or redetermination of a tax under the property tax laws," M.C.L.A. § 205.731(b). Proceedings before the Tribunal are considered de novo. M.C.L.A. § 205.735(1). Appeals from final orders and decisions by the Tribunal may be had as of right to the Michigan court of appeals, M.C.L.A. § 205.753, subject to the constitutional restriction that such appeals from "any decision relating to valuation or allocation" may lie only in cases alleging "fraud, error of law or

the adoption of wrong principles." Mich. Const. art. 6, § 28.

3. The original complaint named five taxing officials of Royal Oak, but three of these officials were dismissed by stipulation of the parties.

4. The Tax Tribunal was affirmed on appeal in *Northwood Apartments v. City of Royal Oak*, 98 Mich.App. 721, 296 N.W.2d 639 (1980). No determination was made for 1977 as the Tax Tribunal had already ruled that it had no jurisdiction over the 1977 assessment.

The collections are the lifeblood of government, no question about it. They have to have taxes. When federal courts start punishing state officers for the way they perform their function it will not only have a chilling effect but a terrifying effect . . .

I think there is a degree of discretion. However, I believe it would be an abuse of discretion under the circumstances to grant [sic] this motion. Even if it would not be abused, if it's one of these areas the court could go either way, I would go this way because I think it's more appropriate knowing you would get a fair trial in state court.

The court subsequently entered a brief order of dismissal in which the only reason given for dismissal was that it appeared to the court that "it should abstain from asserting jurisdiction over this action." Although both the statement from the bench and the order spoke in terms of abstention, the order also provided that "Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction" is granted. As defendants' motion to dismiss contended both that there was no subject matter jurisdiction and, in the alternative, that if there was subject matter jurisdiction, the court should dismiss on abstention grounds, we address both contentions.

For the purposes of this review, the allegations of the complaint are deemed admitted. *Walker Process Equip., Inc. v. Food Machinery and Chem. Corp.*, 382 U.S. 172, 174–75, 86 S.Ct. 347, 348–49, 15 L.Ed.2d 247 (1965).

## II

We deal first with defendants' argument that this action is precluded under the Tax Injunction Act, 28 U.S.C. § 1341. The Act provides that:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy, and efficient remedy may be had in the courts of such State.

The Act expressly prevents the district courts only from enjoining, suspending, or restraining assessment, levy, or collection of taxes. Northwood, however, does not seek to accomplish any of these objectives, either directly or indirectly. Northwood seeks compensatory and punitive damages, costs, and attorney's fees from the city and two city officials who, according to Northwood's allegations, deliberately overassessed Northwood's property to punish Northwood for appealing its property assessment to the Michigan Tax Tribunal and to discourage Northwood from further prosecuting the appeal. Therefore, we must examine the legislative history of the Tax Injunction Act to determine if the Act impliedly precludes the present damage action.

This same issue, whether the Tax Injunction Act prevented a taxpayer from bringing suit for damages, was examined by the Seventh Circuit in *Fulton Market Cold Storage Co. v. Cullerton*, 582 F.2d 1071 (7th Cir. 1978), *cert. denied*, 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979). Plaintiffs in *Fulton*, relying on 42 U.S.C. § 1983, alleged that the Cook County Assessor "systematically, knowingly, intentionally, fraudulently and invidiously assessed its property at levels other than permitted by law and greatly in excess of the levels at which property in Cook County was generally assessed." 582 F.2d at 1073. The district court dismissed the complaint relying on the Tax Injunction Act or alternatively on the Act's underlying policy considerations. Plaintiffs appealed, and the Seventh Circuit reversed, holding that the Tax Injunction Act did not bar a § 1983 action for damages. In so holding, the Seventh Circuit carefully reviewed the legislative history as well as the cases decided under the Act. See 582 F.2d at 1074–80. *See also United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323 at 324–30 (5th Cir. 1979). Therefore, we will not set out in detail in this opinion the history of the Tax Injunction Act.

Reviewing the history of the Act, we conclude, as did the Seventh Circuit, that the purpose of the Tax Injunction Act was to bar any action for equitable relief which would disrupt the state taxing process.

The report of the Senate Judiciary Committee, U.S.S.Rep.No.1035, 75th Cong., 1st Sess. 1–2 (1937), as summarized in *Tramel v. Schrader*, 505 F.2d 1310 (5th Cir. 1975), reveals that the Tax Injunction Act was aimed at two basic problems.

First, Congress noted that some foreign corporations were in the habit of delaying the payment of taxes through an action in federal court since they could invoke diversity jurisdiction. State citizens, on the other hand, could not obtain a federal forum based on diversity jurisdiction. By passing the Tax Injunction Statute, Congress sought to treat the two classes, foreign corporations and resident citizens, alike.

Second, Congress noted that allowance of injunction suits in the federal courts inevitably resulted in delays in the collection of public revenues by the state and local governments. Because of pressing need for the money, the state and local governments often had to compromise the claims, taking less than what was, in fact, due. By closing the federal courthouse door to taxpayer claims, Congress sought to end this burdensome disruption of local financing.

505 F.2d at 1316.

The first problem is not relevant to the present suit as Northwood is not alleging diversity as a basis for jurisdiction. The second problem is not a present concern as Northwood had successfully contested the assessment in state court and had been awarded a refund at the time the district court heard the motion to dismiss. Delay in the collection of taxes was not at issue in this suit.

We note that the policies underlying the Tax Injunction Act have been found to be a basis for exercising discretion in refusing to grant declaratory relief even though such relief is not expressly proscribed under the Act. *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943). The rationale of *Great Lakes* was further discussed in Justice Brennan's concurring opinion in *Perez v. Ledesma*, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971):

*Great Lakes* adhered to the congressional recognition of the unique considerations presented by anticipatory tax litigation ... As the statutes barring anticipatory relief in federal tax cases ... make entirely clear, the unique considerations that were the basis of *Great Lakes* relate not so much to considerations of federalism as to the peculiar needs of tax administration.

401 U.S. at 127, 91 S.Ct. at 698.

Applying the rationale of *Great Lakes*, further explained in *Perez*, to the present controversy, we still find no basis for barring federal jurisdiction in this instance. Northwood does not seek anticipatory relief, nor will this action have disruptive effect on state taxation procedures.

■ In light of the legislative history and the reasoning of the Seventh Circuit in *Fulton*, with which we agree, we conclude that the Tax Injunction Act is not a bar to subject matter jurisdiction in the present § 1983 and § 1985 suit.

### III

Defendants contend, and the district court indicated, that even if Northwood has a right to recover, the availability of a state forum in which Northwood may prosecute the present action provides a sufficient remedy and therefore is a proper basis for abstention. We disagree.

In *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), a district court remanded a diversity case to the state court in which it had originally been brought on the grounds that there was "no available time in which to try the above-styled action in the foreseeable future" and that an adjudication on the merits would be expedited in the state court. The Supreme Court, in reviewing the remand, held that

[A]n otherwise properly removed action may no more be remanded because the district court considers itself too busy to try it than an action properly filed in the federal court in the first instance may be

dismissed or referred to state courts for such reason.

423 U.S. at 344, 96 S.Ct. at 590.

The argument that a federal right of action, specifically created under § 1983, may be dismissed because a state remedy to enforce such cause of action is available is even less persuasive than the argument that a diversity case may be dismissed or remanded because the state provides a clear remedy. Thus, the notion that the availability of a state court remedy is a proper basis for abstention is incorrect.

The Supreme Court noted in *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), that the failure of state courts to vindicate federal rights was one of the primary motivations for passage of the statute which was a predecessor to § 1983. Further, we note that a district court's entertaining of § 1983 and § 1985 damage actions, unlike the declaratory judgment action in *Great Lakes*, is not a matter for the exercise of discretion.

Defendants claim that even if the present action is not precluded by the Tax Injunction Act, the federal court should still abstain from asserting jurisdiction because of the general policies of federalism and comity.

In support of this contention, defendants again cite the holding in *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943). We note, however, that the question in *Great Lakes* was whether the Tax Injunction Act proscribed the issuance of a declaratory judgment in a context in which the Act was otherwise clearly applicable. The Court stated that it was not necessary to determine whether the Act, which did not expressly cover declaratory judgments, proscribed the issuance of such judgments. The Court held that since the policy of abstaining in these circumstances was in existence prior to the Act, it was an improper exercise of discretion to issue a *declaratory* judgment which would contravene the purposes of the Act. The Court reasoned that accepting jurisdiction in such actions

may in every practical sense operate to suspend collection of the state taxes until the litigation is ended. But we find it unnecessary to inquire whether the words of the statute may be so construed as to prohibit a declaration by federal courts concerning the invalidity of a state tax. For we are of the opinion that the considerations which have led federal courts of equity to refuse to enjoin the collection of state taxes, save in exceptional cases, require a like restraint in the use of the declaratory judgment procedure.

319 U.S. at 299, 63 S.Ct. at 1073.

The present § 1983 and § 1985 action would not have the practical effect of suspending collection of state taxes.

In the recent Sixth Circuit case of *Hanna v. Toner*, 630 F.2d 442 (1980), this court carefully examined the general theories underlying the abstention doctrine. 630 F.2d at 444–46. This court quoted from *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813–14, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976):

Abstention from the exercise of federal jurisdiction is the exception, not the rule. 'The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.' *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). '[I]t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it.' *Alabama Pub. Serv. Comm'n v. Southern R. Co.*, 341 U.S. 341, 361, 71 S.Ct. 762, 774, 95 L.Ed. 1002 (1951) (Frankfurter, J., concurring in result).

■ Defendants have not shown any "extraordinary" circumstances involved in the present suit which would warrant abstention. Further, a review of the general grounds for abstention shows no generally accepted theory of abstention applicable in the present action.

■ A federal court may abstain where there are unsettled questions of state law which, if settled by the state, would avoid the necessity of deciding the matter on a federal constitutional law ground. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

■ A federal court may also abstain where accepting jurisdiction would create needless conflict with state policies in areas of basic concern to the states, and federal adjudication in the area would disrupt state efforts to establish its own policy with respect to matters of substantial public concern. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

Abstention is also appropriate to avoid duplicative litigation. *Colorado River Water Con. Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

■ A final ground for abstention is to further the policies of federalism or comity. That is, a federal court should abstain, except under extraordinary circumstances, where exercising jurisdiction would frustrate a pending state court proceeding. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

None of the above abstention doctrines apply to the present suit.

Defendants contend an additional consideration supporting abstention is that allowing a § 1983 action to proceed in state court would be less of an intrusion on state sovereignty. We note that it is hardly less of an intrusion on state sovereignty in this context for a state court to adjudicate this § 1983 and § 1985 cause of action than for the federal court to adjudicate the action.

Defendants finally contend that allowing the federal courts to entertain the present action will have an undesirable chilling effect on officials who administer state tax assessments. We see no reason, however, to believe that allowing the same action to proceed in state court would have a less chilling effect on state officials except to the extent that they believe a state court would be less vigorous in vindicating plaintiff's § 1983 and § 1985 rights.

IV

■ The dissent would hold that the district court did not have "jurisdiction" because the complaint did not state a claim for relief under the statutes relied upon by Northwood. However, as recognized by the dissent, the contention that the complaint did not state a claim was contained in defendants' answer, while the district court ruled only on a motion to dismiss. This motion raised the question under Rule 12(b)(1), Fed.R.Civ.P., relying on the Tax Injunction Act, whether the district court had subject matter jurisdiction. More to the point, the district court *had* subject matter jurisdiction even if the complaint did not state a claim since the right of Northwood to recover depends upon an interpretation of the Constitution and laws of the United States. *Wheeldin v. Wheeler*, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963); 5 Wright & Miller, Federal Practice & Procedure, § 1350, note 54. Accordingly, even if we agreed that the complaint does not allege a claim, we could not, as the dissent would have us do, dismiss for lack of subject matter jurisdiction.

V

We hold that the Tax Injunction Act does not justify dismissal for lack of subject matter jurisdiction. Further, we determine that no abstention doctrine applies to this proceeding.

We point out that while the district court impliedly assumed that the complaint states a claim for relief, it never so determined, as the issue was not before it on this motion to dismiss. This question is not presently before us, we do not rule on the question, and we indicate no opinion whether the com-

plaint states a claim for relief under the federal statutes relied upon.[5]

We reverse and remand for further proceedings in accordance with this opinion.

PHILLIPS, Senior Circuit Judge (dissenting).

I respectfully dissent. I would affirm the dismissal of the action on the ground that the district court did not have subject matter jurisdiction under 42 U.S.C. § 1983 or § 1985. The majority opinion expressly reserves a decision of this question.

## I

In their answer to the complaint the defendants included the following affirmative defense: "Plaintiff has failed to state a cause of action under 42 U.S.C. § 1983, 42 U.S.C. § 1985 or State law."

On July 20, 1979, the defendants, City of Royal Oak, Max La Valley, the city's tax assessor, and Thomas Sommerville, the city's deputy tax assessor, filed a motion to dismiss the complaint pursuant to Fed.R. Civ.P. 12(b)(1) on the ground that "this court lacks subject matter jurisdiction."

On September 12, 1979, the district court entered the following order:

This matter having come before the Court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure briefs having been submitted by the parties and all parties having had the opportunity to be heard, and it appearing to the Court that it should abstain from asserting jurisdiction over this action:

WHEREFORE, IT IS HEREBY ORDERED that Defendants' Motion To Dismiss For Lack of Subject Matter Jurisdiction is granted, with prejudice.

As the majority opinion points out, the oral decision of the district court, announced from the bench, is not clear as to whether the action was dismissed (1) as precluded by the Tax Injunction Act, 28 U.S.C. § 1341, (2) or on the ground that the court did not have subject matter jurisdiction, or (3) as barred by the doctrine of abstention. The majority opinion reverses on the abstention and Tax Injunction Act issues and reserves a decision on the question of whether the district court had subject matter jurisdiction under 42 U.S.C. §§ 1983 or 1985. I prefer to decide the appeal on the ground that the district court did not have subject matter jurisdiction.

Even if the majority opinion is correct in holding that the issue of subject matter jurisdiction is not before this court, we are required to consider that question independently and on our own motion. *Mansfield, Coldwater & Lake Michigan Railway Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884); *Brown v. Keene*, 33 U.S. (8 Peters) 112, 8 L.Ed. 885 (1834); *Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126, 2 L.Ed. 229 (1804); *Jones v. Perrigan*, 459 F.2d 81, 83 (6th Cir. 1972).

I would hold that §§ 1983 and 1985 do not confer subject matter jurisdiction to decide an action by a taxpayer against a local tax assessor for damages on the ground that the assessment of the taxpayer has been increased because the taxpayer sought review of prior assessments. I do not believe that an increased tax assessment, even if made in bad faith by a state or local tax official, is a constitutional violation within the contemplation of the civil rights statutes.

In the present case the taxpayer has an adequate remedy under state law. The remedies provided by the laws of Michigan are set forth in detail in the comprehensive opinion of District Judge Charles W. Joiner in *Kistner v. Milliken*, 432 F.Supp. 1001 (E.D.Mich.1977), holding that Michigan provides a plain, speedy and efficient remedy for taxpayers complaining of tax assessments.

---

5. See in this connection *Rosewell v. LaSalle National Bank*, —— U.S. ——, 101 S.Ct. 1221, 67 L.Ed.2d —— (1981), and particularly the dissenting opinion of Justice Stevens at ——, 101 S.Ct. at 1237, and *Fulton Market Cold Storage Co., supra*, as well as *A. Bonding Co. v. Sunnuck*, 629 F.2d 1127 (5th Cir. 1980), cited by the dissent.

It is a well established principle that the federal courts will not interfere in the assessment and collection of state and local taxes where an adequate remedy is available in the state courts. It, therefore, is inconceivable to me that, by the enactment of §§ 1983 or 1985, Congress intended to subject tax assessors to actions for damages for excessive tax assessments, even if made in bad faith.

In *Matthews v. Rodgers,* 284 U.S. 521, 525–26, 52 S.Ct. 217, 219–20, 76 L.Ed. 447 (1932), Mr. Justice Stone wrote for a unanimous court:

> The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it. Whenever the question has been presented, this Court has uniformly held that the mere illegality or unconstitutionality of a state or municipal tax is not in itself a ground for equitable relief in the courts of the United States. If the remedy at law is plain, adequate, and complete, the aggrieved party is left to that remedy in the state courts, from which the cause may be brought to this Court for review if any federal questions be involved, Jud.Code § 237, or to his suit at law in the federal courts if the essential elements of federal jurisdiction are present. *See Boise Water Co. v. Boise City,* 213 U.S. 276, 29 S.Ct. 426, 53 L.Ed. 796; *Shelton v. Platt,* 139 U.S. 591, 11 S.Ct. 646, 35 L.Ed. 273; *Dows v. Chicago,* 11 Wall. 108, 110, 112, 20 L.Ed. 65.

To like effect see *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 298, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943); *Helmsley v. City of Detroit,* 320 F.2d 476 (6th Cir. 1963). See, also, *Rosewell v. LaSalle National Bank,* —— U.S. ——, ——, 101 S.Ct. 1221, 1235, 67 L.Ed.2d —— (1981).

I would follow *Dillon v. State of Montana,* 634 F.2d 463 (9th Cir. 1980), and *A. Bonding Co. v. Sunnuck,* 629 F.2d 1127 (5th Cir. 1980) and hold that state and local tax assessments cannot be attacked, directly or indirectly, under §§ 1983 or 1985, where there is an adequate remedy under State law. *See also Ludwin v. City of Cambridge,* 592 F.2d 606 (1st Cir. 1979); *Bland v. McHann,* 463 F.2d 21 (5th Cir.), *cert. denied,* 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1972). To the extent that *Fulton Market Cold Storage Co. v. Cullerton,* 582 F.2d 1071 (7th Cir. 1978), *cert. denied,* 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979), may be construed to hold to the contrary, I would decline to follow it.

Sections 1983 and 1985 were never intended as a catch-all under which a myriad of suits, traditionally within the exclusive jurisdiction of state courts, can be brought in the federal courts. Under §§ 1983 and 1985 there must be a showing of a clear deprivation of a constitutional right. *Ryan v. Aurora City Board of Education,* 540 F.2d 222, 225 (6th Cir. 1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977). Jurisdiction cannot be attained in the federal courts by the procedural device of filing an insubstantial action under §§ 1983 or 1985. *Bates v. Dause,* 502 F.2d 865, 867 (6th Cir. 1974).

In *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979), the Supreme Court said: "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws'."

The Supreme Court recently emphasized the limitations on litigation filed under § 1983 in a decision applying the rules of collateral estoppel to § 1983 actions. In *Allen v. McCurry,* —— U.S. ——, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). The Court wrote:

> Moreover, the legislative history of § 1983 does not in any clear way suggest that Congress intended to repeal or restrict the traditional doctrines of preclusion. The main goal of the Act was to override the corrupting influence of the Ku Klux Klan and its sympathizers on the governments and law enforcement agencies of the Southern States, see *Mon-*

roe v. Pape, 365 U.S. 167, 174, 81 S.Ct. 473, 477, 5 L.Ed.2d 492, and of course the debates show that one strong motive behind its enactment was grave congressional concern that the state courts had been deficient in protecting federal rights, *Mitchum v. Foster*, 407 U.S. 225, 241–242, 92 S.Ct. 2151, 2161, 32 L.Ed.2d 705, *Monroe v. Pape, supra*, 365 U.S., at 180, 81 S.Ct. at 480. But in the context of the legislative history as a whole, this congressional concern lends only the most equivocal support to any argument that, in cases where the state courts have recognized the constitutional claims asserted and provided fair procedures for determining them, Congress intended to override § 1738 or the common-law rules of collateral estoppel and res judicata. Since repeals by implication are disfavored, *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540, much clearer support than this would be required to hold that § 1738 and the traditional rules of preclusion are not applicable to § 1983 suits.

As the Court has understood the history of the legislation, Congress realized that in enacting § 1983 it was altering the balance of judicial power between the state and federal courts. See *Mitchum v. Foster, supra*, 407 U.S., at 241, 92 S.Ct. at 2161. But in doing so, Congress was adding to the jurisdiction of the federal courts, not subtracting from that of the state courts. See *Monroe v. Pape, supra*, 365 U.S., at 183, 81 S.Ct. at 482 ("The federal remedy is supplementary to the state remedy...."). The debates contain several references to the concurrent jurisdiction of the state courts over federal questions, and numerous suggestions that the state courts would retain their established jurisdiction so that they could, when the then current political passions abated, demonstrate a new sensitivity to federal rights.

To the extent that it did intend to change the balance of power over federal questions between the state and federal courts, the 42d Congress was acting in a way thoroughly consistent with the doc-trines of preclusion. In reviewing the legislative history of § 1983 in *Monroe v. Pape, supra*, the Court inferred that Congress had intended a federal remedy in three circumstances: where state substantive law was facially unconstitutional, where state procedural law was inadequate to allow full litigation of a constitutional claim, and where state procedural law, though adequate in theory, was inadequate in practice. 365 U.S., at 173–174, 81 S.Ct. at 476, 477. In short, the federal courts could step in where the state courts were unable or unwilling to protect federal rights. *Id.*, at 176, 81 S.Ct. at 478. This understanding of § 1983 might well support an exception to res judicata and collateral estoppel where state law did not provide fair procedures for the litigation of constitutional claims, or where a state court failed to even acknowledge the existence of the constitutional principle on which a litigant based his claim. Such an exception, however, would be essentially the same as the important general limit on rules of preclusion that already exists: Collateral estoppel does not apply where the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court. See text, at n. 7, *supra*. But the Court's view of § 1983 in *Monroe* lends no strength to any argument that Congress intended to allow relitigation of federal issues decided after a full and fair hearing in a state court simply because the state court's decision may have been erroneous.

\* \* \* \* \* \*

The actual basis of the Court of Appeals' holding appears to be a generally framed principle that every person asserting a federal right is entitled to one unencumbered opportunity to litigate that right in a federal district court, regardless of the legal posture in which the federal claim arises. But the authority for this principle is difficult to discern. It cannot lie in the Constitution, which makes no such guarantee, but leaves the

scope of the jurisdiction of the federal district courts to the wisdom of Congress. And no such authority is to be found in § 1983 itself. For reasons already discussed at length, nothing in the language or legislative history of § 1983 proves any congressional intent to deny binding effect to a state court judgment or decision when the state court, acting within its proper jurisdiction, has given the parties a full and fair opportunity to litigate federal claims, and thereby has shown itself willing and able to protect federal rights. And nothing in the legislative history of § 1983 reveals any purpose to afford less deference to judgments in state criminal proceedings than to those in state civil proceedings. There is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all. (Footnotes omitted.) —— U.S. at ——, 101 S.Ct. pp. 417–20.

Among the many other examples of restrictions on jurisdiction under § 1983 or § 1985 are: *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (state officials not liable for murder committed by paroled sex offender); *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (false imprisonment pursuant to valid arrest warrant); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (medical malpractice claim by inmate against prison official); *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (defamatory flyer of "active shoplifters" distributed by city police); *Stevens v. Hunt*, 646 F.2d 1168 (6th Cir. 1981) (academic dismissal of medical students by Dean of Medical School for twice failing to pass examination of National Board of Medical Examiners); *Studen v. Beebe*, 588 F.2d 560 (6th Cir. 1978) (city officials rezoning from three-tiered to single residence zone); *Bogard v. Cook*, 586 F.2d 399 (5th Cir. 1978), *cert. denied*, 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113

(1979) (prison inmate stabbed by another inmate due to inadequate search of prisoners); *Bonner v. Coughlin*, 545 F.2d 565 (7th Cir. 1976), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978) (negligent search of prisoner's cell resulting in loss of his trial transcript); *Ohio Inns, Inc. v. Nye*, 542 F.2d 673 (6th Cir. 1976), *cert. denied*, 430 U.S. 946, 97 S.Ct. 1583, 51 L.Ed.2d 794 (1977) (state officials' tortious interference with contract between plaintiff and state); *Kelly v. Springett*, 527 F.2d 1090 (9th Cir. 1975) (post-arrest seizure of taxpayer's funds and bank account for unpaid state income taxes); *Coe v. Bogart*, 519 F.2d 10 (6th Cir. 1975) (transfer of school principal without notice of charges or hearing); *Manchester v. Lewis*, 507 F.2d 289 (6th Cir. 1974) (discharge of untenured teacher because of unsatisfactory teaching performance); *Denman v. Leedy*, 479 F.2d 1097 (6th Cir. 1973) (intrafamily child custody battle).

## II

Although the majority opinion cites persuasive authority to the contrary, I would hold further that the present action is barred by the Anti-injunction Statute. I agree with the reasoning of *A. Bonding Co. v. Sunnuck, supra*, 629 F.2d 1127 (1980), involving an action under 42 U.S.C. § 1983 to recover money damages from local tax officials for tortious enforcement of an allegedly unconstitutional tax. The Fifth Circuit, holding that the action was barred by the Anti-injunction Statute, 28 U.S.C. § 1341, wrote:

Section 1341 has been construed to be much broader than its words initially suggest. As we noted in *United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323, 326 (5th Cir. 1979): "The concept that section 1341 is not a narrow statute aimed only at injunctive interference with tax collection, but is rather a broad restriction on federal jurisdiction in suits that impede state tax administration, has continued to gain credence in the federal courts." The purpose of section 1341 is "to protect the integrity of the state treasury ...." *Hargrave v. McKinney*, 413 F.2d 320, 326

(5th Cir. 1969). "[T]he history of section 1341, from its precursor federal equity practice to its most current judicial construction, evidences that it is meant to be a broad jurisdictional impediment to federal court interference with the administration of state tax systems." *United Gas*, 595 F.2d at 326.

\* \* \* \* \* \*

A federal court suit for damages against a state tax administrator, based on the theory that the administrator tortiously enforced an unconstitutional tax, would have many of the same detrimental effects that actions for tax refund, declaratory, or injunctive relief would have. Although the federal court's decision in such a case technically would bind only the immediate parties, as a practical matter it would undoubtedly dampen future state collection efforts. Once a tax provision has been found invalid, and a state official has been held liable for its application, collecting officials will "doubtless stop asserting rights to taxes under that section, as surely as if collection under it had been formally enjoined." *United Gas*, 595 F.2d at 329–30. As with refund actions, there is no way to predict the full impact of such litigation, but as we held in *United Gas*,

> the threat exists that any such litigation could put substantial portions of a state's revenue or broadly applicable sections of a state's tax code in jeopardy. The policy of section 1341 is that such judicial threats should come only from state courts when the state provides taxpayers a remedy that is plain, speedy and efficient. Review of such state court decisions in the United States Supreme Court remains available to preserve whatever substantial federal rights may be implicated.

595 F.2d at 330.

The district court's award of damages is especially disruptive in this case, since the court expressly reserved jurisdiction to assess further damages in the future should the defendants persist in enforcing the one-percent tax. The effect of this ongoing jurisdiction is virtually the same as that of an injunction. Further, the district court's imposition of one-cent nominal damages indicates that the plaintiff was unable to show real damage at the time of the suit. The claim for damages was plainly an attempt to circumvent the prohibitions of section 1341; it did not change the true nature of the case. *See 28 East Jackson Enterprises, Inc. v. Cullerton*, 523 F.2d 439, 440–41 n. 2 (7th Cir. 1975), *cert. denied*, 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976). 629 F.2d at 1133–34.

If local tax assessors must live under threat of an action for damages pursuant to § 1983 or § 1985 every time they increase the tax assessment of a disgruntled taxpayer, the consequences on state and local tax revenues could be even more disastrous than a federal court injunction against increases in local tax assessments. I believe the present action is barred by the Anti-injunction Statute.

I agree with the majority opinion that abstention by the district court is not appropriate in the present case.

For the reasons indicated, I would affirm the decision of the district court dismissing the complaint.