**Richard L. REYNOLDS, Plaintiff,**

v.

**CITY OF DAYTON, Ohio, et al., Defendants.**

No. C–3–81–569.

United States District Court, S. D. Ohio, W. D.

Jan. 4, 1982.

Dwight D. Brannon, Vic Hodge, Dayton, Ohio, for plaintiff.

Thomas Petkewitz, City Atty., J. Anthony Sawyer, Dayton, Ohio, for defendants.

## DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT; OVERRULING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION AND TO STRIKE CERTAIN DOCUMENTS FROM FILE

RICE, District Judge.

This matter is before the Court pursuant to the Motion of all Defendants herein to dismiss the Complaint, to dismiss the Plaintiff's Request for a Preliminary Injunction, and to strike certain documents from the file. In support of their Motion to dismiss the Complaint, Defendants have submitted a Memorandum, in which they contend that the Court has no jurisdiction over the present action. In addition, certain procedural irregularities have been objected to by Defendants in part A of their Memorandum. Plaintiff has submitted a brief Memorandum in Opposition, which addresses the substantive arguments of the Defendants, but does not comment upon the procedural issues raised by them.

Briefly, the relevant background of this action, as stated in the Complaint, and accepted as true for the purpose of ruling upon this motion, *United States v. New Wrinkle, Inc.*, 342 U.S. 371, 373, 72 S.Ct. 350, 351, 96 L.Ed. 417 (1952), is as follows. The Plaintiff, Richard Reynolds, is employed by the City of Dayton as a police officer in the City of Dayton Police Department. On June 28, 1978, the City of Dayton enacted Ordinance No. 25558 (hereinafter Residency Rule), which specifies, *inter alia*, that those persons living in the city as of the effective date of the ordinance shall remain resident therein as long as they remain in the classified service and that those persons living outside of the City of

Dayton, but who are residents of Montgomery County, shall continue to maintain that status as long as they remain in a classified service. The Residency Rule further provides that violations shall be grounds for dismissal in accordance with the City Charter. At the time the Residency Rule took effect, Reynolds was residing outside the Dayton City Limits. Thereafter, on July 14, 1978, Reynolds moved into the City, and at some later date, undisclosed by the Complaint, moved out of the City, to Centerville, Ohio. On October 6, 1981, Plaintiff was notified that he was charged with breaching Rule 18, Section 2(F) of the Civil Services Rules of Dayton, Ohio, for which discharge is merited, because he had not complied with the Residency Rule. Plaintiff then filed a Complaint herein, on November 18, 1981, under 42 U.S.C. §§ 1982, 1983, 1985, 1988, and 2000a et seq., alleging as a jurisdictional basis, 28 U.S.C. §§ 1331 and 1343. Plaintiff alleged, *inter alia*, that the City had violated his right to equal protection by selectively enforcing the Residency Rule. Plaintiff further claimed that similarly situated employees had been treated in a dissimilar fashion, because some employees had been dismissed for violating the Residency Rule, while others had received lesser sanctions.

On November 24, 1981, Plaintiff filed a Request for a Temporary Restraining Order, which was granted by this Court on November 25, 1978, upon a finding that Plaintiff's First Amendment Right to Freedom of Association, i.e., his participation in a pending Fraternal Order of Police election, would be irreparably harmed by the disciplinary hearing which was scheduled for November 30, 1981. In particular, the Court reasoned that later reinstatement pursuant to administrative or court action could not restore to Plaintiff his right to participate in that election.

In an entry filed November 30, 1981 (Doc. # 20), the Court set forth a schedule of events leading up to the oral hearing on Plaintiff's Request for a Preliminary Injunction, which was to have been held on Monday, December 14, 1981. To this end, Defendants were directed to file a motion to dismiss by Tuesday, December 1, 1981, with a contra memorandum being due from Plaintiff by Monday, December 7, 1981. If further reply was deemed necessary by Defendants, said reply was to be filed by Wednesday, December 9, 1981. The Court further indicated that a decision would be rendered on the matters raised, without oral hearing, by Friday, December 11, 1981. On that date, the Court briefly communicated to counsel its oral decision on the pending motions, without advancing its reasons therefor. This opinion will set forth this Court's basis for overruling the Defendants' motions. The parties filed memoranda as directed, and the matter now comes before the Court for determination. With the above background in mind, the Court now turns to consideration of the issues presented by the Defendants' motions.

## I. THE DEFENDANTS' MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT

The Defendants base their motion to dismiss the Plaintiff's complaint on three grounds, to wit: *res judicata*, failure to exhaust administrative remedies and abstention.

### A. *Res Judicata*

Defendants have contended that this action must be dismissed under the doctrine of *res judicata* because the constitutionality of the Residency Rule has been upheld in two Ohio cases, one of which, *Dayton Public Service Union Local 101 v. City of Dayton*, No. 79–558 (Court of Common Pleas for Montgomery County, Dec. 16, 1980), involved the same ordinance which is at issue herein. In addition, Defendants have indicated that Plaintiff was a party to that action by virtue of his membership in the class certified therein. Plaintiff has not disputed that he was a party to that action, but has argued that *res judicata* is not applicable to this action, which involves different issues than those which were previously litigated.

■ In *Commissioner v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), the Supreme Court stated that:

> The general rule of *res judicata* applies to repetitious suits involving the same cause of action . . . . The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."

*Id.* at 597, 68 S.Ct. at 719, quoting from *Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195 (1876). Applying this standard herein, this Court is in agreement with the Defendants that the constitutionality of the Residency Rule may *not* be relitigated in this action, and therefore, the following portions of the Complaint must be dismissed: ¶ 20; that portion of ¶ 25 which refers to *enactment,* as opposed to enforcement, of the Residency Rule; the Fourth Cause of Action, i.e., ¶ 28 and ¶ 29; and, the Fifth Cause of Action, i.e., ¶ 30 and 31.[1]

■ However, the Court has also concluded that the issue of *unequal application* of the Residency Rule is not barred from determination herein either by *res judicata* or by collateral estoppel, since there is no indication that the potential *application* of the Residency Rule as alleged herein, was ever an issue in the actions cited to this Court. In fact it does not appear possible that such an issue could have been raised previously, in light of the fact that Plaintiff was not notified of his alleged violation of the Residency Rule until October, 1981, well after the termination of the prior litigation. Thus, there appears to be no basis for applying *res judicata* or collateral estoppel to the issue of the allegedly unequal enforcement of the Residency Rule. 333 U.S. at 598, 68 S.Ct. at 719. Accordingly, the Defendants' Motion to Dismiss the remaining portions of the complaint, under the doctrine of *res judicata,* must be denied.

### B. *Exhaustion of Remedies*

■ As a second argument for dismissal, Defendants have claimed that a civil rights action is barred where other remedies, such as administrative remedies, are available and have not been exhausted. The Plaintiff has responded by indicating that exhaustion is not required when the remedy is inadequate, or where the hearing body is biased. In *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 1691, 36 L.Ed.2d 488 (1973) (*Gibson*), the Supreme Court noted that generally, where state administrative proceedings are pending, "the exhaustion doctrine would require the Court to delay action until the administrative phase of the state proceedings is terminated, at least where coverage or liability is contested and administrative expertise, discretion or fact-finding is involved." *Id.* at 574, 93 S.Ct. at 1695. However, the Court also stated that:

> [T]his Court has expressly held in recent years that state administrative remedies need not be exhausted where the federal court plaintiff states an otherwise good cause of action under 42 U.S.C. § 1983.

*Id.* at 574, 93 S.Ct. at 1695. (citations omitted). The Sixth Circuit has also explicitly held that exhaustion of state administrative remedies is not required in a § 1983 action. *Jones v. Metzger,* 456 F.2d 854, 856 (6th Cir. 1972) (*Jones*). Therefore, this Court concludes that the exhaustion requirement does not apply herein,[2] since Plaintiff has

---

1. The Court notes that Plaintiff and the Defendants have agreed that the constitutionality of the Residency Rule is not an issue in this action.

2. This Court is aware that there is at present some disagreement among the Circuits with regard to whether the Supreme Court's comments, as cited above, constitute an absolute barrier to the application of an exhaustion requirement in § 1983 actions. The Fifth Circuit in *Patsy v. Florida International University,* 634 F.2d 900 (5th Cir. 1981), cert. granted —— U.S. ——, 102 S.Ct. 88, 70 L.Ed.2d 81 (1981) (*Patsy*), noted this conflict, *id.* at 908–909, and concluded after a thorough analysis of relevant Supreme Court authority, that "adequate and appropriate state administrative remedies must be exhausted before a Section 1983 action is permitted to proceed in federal court, absent any of the traditional exceptions to the general

stated an otherwise good cause of action under § 1983.[3]

## C. *Abstention*

As a third ground for dismissal, Defendants have maintained that this Court should not interfere with pending state proceedings. Although Defendants have not specifically characterized the theory to which they are referring, the Court assumes that Defendants have requested that this Court refrain or abstain from considering the claims herein, either under the *Younger* doctrine, *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (*Younger*), or under the *Pullman* doctrine, *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (*Pullman*).[4] Accordingly, the Court will consider both of these theories in order to determine whether abstention would be appropriate in the context of the present case.

In *Younger*, the Supreme Court indicated that because of the policies of federalism or comity, "a federal court should abstain, except under extraordinary circumstances, where exercising jurisdiction would frustrate a pending state court proceeding." *Northwood Apartments v. LaValley*, 649 F.2d 401, 407 (6th Cir. 1981) (*Northwood Apartments*), citing *Younger*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Younger* dealt solely with pending state criminal proceedings, *id.* at 46, 91 S.Ct. at 751, but in *Huffman v. Pursue, LTD.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (*Huffman*), the Supreme Court extended the *Younger* doctrine to the civil context, by requiring abstention where civil nuisance proceedings had been filed in state court prior to the initiation of the federal court action. *Id.* at 603–605, 95 S.Ct. at 1207–1208. Despite some comments in *Huffman* regarding the "critical similarities," *id.* at 605, 95 S.Ct. at 1208, between the criminal prosecution in *Younger* and the quasi-criminal state court proceedings in *Huffman, id.*, the Supreme Court later, in *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376

exhaustion rule." *Id.* at 912. Since the *Patsy* decision is presently on appeal to the Supreme Court, it may be that the Supreme Court will clarify this area in the near future. However, until such time, this Court is bound by the Sixth Circuit's ruling in *Jones* that exhaustion is not required under § 1983. Moreover, even if some type of exhaustion requirement should be deemed to apply, there is a serious question herein whether the state remedies are adequate under the circumstances of this case, in view of the allegations of bias which have been made. *Gibson*, 411 U.S. at 574, n.14, 93 S.Ct. at 1696, n.14. *See also*: footnote 6, *infra*.

3.  As indicated in the text above, the Court has concluded that the allegations in the Complaint state a good cause of action under § 1983. In *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), the Supreme Court stated that only two allegations are required to state a cause of action under § 1983:

    First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.

    *Id.* at 640, 100 S.Ct. at 1923. There does not appear to be any question herein that the second branch of the above test has been satisfied. Moreover, Defendants have not disputed that Plaintiff has been deprived of a federal right, although they have maintained that no substantial federal question exists in this case

because Plaintiff has adequate, unexhausted state remedies, and because the constitutionality of the Residency Rule has been previously determined in state court. These contentions, even if true, have no relation to the primary issue herein, which involves the allegedly *unequal application* of the Residency Rule. The Complaint alleges selective enforcement of the Rule in that similarly situated employees have been subjected to unequal treatment by the City of Dayton. The Sixth Circuit has indicated that "[u]nequal application of a state law fair on its face is not a denial of equal protection unless there is shown to be present an element of intentional or purposeful discrimination." *Delia v. Court of Common Pleas of Cuyahoga County*, 418 F.2d 205, 206 (6th Cir.), cert. denied 396 U.S. 886, 90 S.Ct. 174, 24 L.Ed.2d 161 (1969), citing *Snowden v. Hughes*, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Whether the actions of the Defendants herein were intentional, or were merely the result of errors and irregularities, 418 F.2d at 206, will, of course, be dependent upon the proof presented at trial. The allegations in the Complaint, as previously discussed, do sufficiently allege a deprivation of a federal right.

4.  For an excellent discussion of the distinctions between these related doctrines, *see: Hanna v. Toner*, 630 F.2d 442 (6th Cir. 1980), cert. denied 450 U.S. 919, 101 S.Ct. 1365, 67 L.Ed.2d 346 (1981).

(1977) (*Juidice*), disavowed such a limitation by stating that:

> We now hold, however, that the principles of *Younger* and *Huffman* are not confined solely to the types of state actions which were sought to be enjoined in those cases.

*Id.* at 334, 97 S.Ct. at 1216. The Court did, however, refrain from applying *Younger* to all civil litigation. *Id.* at 336, n.13, 97 S.Ct. at 1218, n.13.

■ The appropriate application of the *Younger* doctrine in the civil context has obviously caused much discussion among the federal district and circuit courts. After an analysis of the pertinent authority, this Court has concluded that the *Younger* doctrine need not be applied herein, since no state court proceedings have yet been commenced.[5] The Supreme Court has not yet extended *Younger* to a situation involving state administrative proceedings, although there are indications that the Court may soon address this question. *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 480, n.10, 97 S.Ct. 1898, 1904, n.10, 52 L.Ed.2d 513 (1977). In this Circuit, however, a lower court has applied *Younger* in a case involving state administrative proceedings. In *Rucker v. Wilson*, 475 F.Supp. 1164 (E.D.Mich.1979) (*Rucker*), proceedings were pending against the federal court plaintiff, Rucker, before the Medical Practice Board of the State of Michigan. *Id.* at 1165. Rucker had been charged with certain improprieties in connection with the performance of abortions, and on two occa-

sions, had appealed to the Michigan state courts for interlocutory relief, which was temporarily granted and then dissolved. *Id.* Finally, Rucker filed an action with the district court, which dismissed the case. The district court did not disagree with Rucker's contention that "no Court has yet ruled that *Younger* extends to state administrative proceedings," *id.* at 1166, but the Court still found that abstention would be appropriate. *Id.* The Court appeared to premise its decision primarily on the fact that since Rucker had appeal rights in Michigan State Courts, there was no reason to permit "two full bites at the judicial apple." *Id.* In addition, the Court found that because the enforcement of state criminal laws was involved, and the state was a party to the administrative proceeding, the situation in *Rucker* was thus like that in *Huffman v. Pursue, LTD.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1974), despite the fact that different types of tribunals were involved. Although this opinion may be read broadly as an inference that the type of tribunal involved is of no consequence for *Younger* purposes, this Court believes that such an interpretation would not be warranted in view of the *Rucker* Court's statement that:

> [T]he *Younger* doctrine does apply to administrative proceedings *like this one*, where the state is a party. The enforcement of state criminal law is involved, and there is a right to appeal any federal constitutional questions to the state courts.

---

5. In two recent cases, *Parker v. Turner*, 626 F.2d 1 (6th Cir. 1980) (*Parker*), and *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981), the Sixth Circuit has applied *Younger* principles to situations where at least technically, no state proceedings were shown to have been pending. *Parker*, 626 F.2d at 4; *But cf. J.P. v. DeSanti*, (indicating that where class involved 11,000 juveniles, "it is a certainty that there are always juvenile court proceedings pending with respect to some class member." 653 F.2d at 1183). However, these cases are not controlling upon the present, which does not involve a problem which the Sixth Circuit found analogous to the "classic *Younger* scenario," *Parker*, 626 F.2d at 6, i.e., "the problem of federal interference with state court practices." *Id.* In such a situation, involving *state court prac-*

*tices*, the Sixth Circuit found the "equitable restraint considerations to be nearly absolute." *Id.* at 7. The Court did specifically state, however, that:

> A federal court can enjoin unconstitutional behavior by a state administrative officer or law enforcement officer. Even in the absence of a pending state proceeding, however, a federal court cannot grant relief regarding unconstitutional practices which occur at a state trial.

*Id.* at 10. Because the case presently before this Court does not involve injunctive relief against state court practices, even the above decisions, which require abstention where there are no pending state court proceedings, do not mandate abstention herein.

142

475 F.Supp. at 1166. Unlike *Rucker*, this case does not involve the State as a party, or the enforcement of criminal laws, and therefore, this Court sees no reason to apply *Younger* to the type of proceedings involved herein.[6]

Moreover, to the extent that *Rucker* relied on the adequacy of state remedies as a ground for requiring abstention, that ruling appears to be of doubtful validity in view of the Sixth Circuit's subsequent decision in *Northwoods Apartments, supra*, 649 F.2d 401 (6th Cir. 1981), wherein the Court of Appeals emphatically rejected the concept that adequacy of state remedies would mandate abstention, by stating that:

> The argument that a federal right of action, specifically created under § 1983 may be dismissed because a state remedy to enforce such a cause of action is available is even less persuasive than the argument that a diversity case may be dismissed or remanded because the state provides a clear remedy. *Thus, the notion that the availability of a state court*

> *remedy is a proper basis for abstention is incorrect.*

*Id.* at 406 (emphasis added).

Because of the differences between *Rucker* and the present case, and because of the Sixth Circuit's comments in *Northwood Apartments*, which appear to cast doubt upon the *Rucker* premise that abstention is appropriate to avoid "two full bites at the judicial apple," *Rucker*, 475 F.Supp. at 1166, this Court declines to extend *Younger* in the manner suggested in *Rucker*.

■ Based on the foregoing analysis, the Court concludes that it is not required to apply *Younger* in the context of this particular proceeding, and that even if *Younger* could be extended under certain circumstances to require federal court abstention where state administrative proceedings are pending, the necessary predicate for such an extension is not present herein. *See*: footnote 6, *supra*. Having thus dismissed the necessity for a *Younger* abstention, the Court will next briefly address the appropriateness of abstention under the *Pullman* doctrine.

---

6. In *Simopoulos v. Virginia State Board of Medicine*, 644 F.2d 321 (4th Cir. 1981) (*Simopoulos*), the Fourth Circuit Court of Appeals interpreted *Gibson, supra*, 411 U.S. 565, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), as indicating that under certain circumstances the pendency of state administrative proceedings could be sufficient to invoke the application of *Younger*. 644 F.2d at 326. The Court in *Simopoulos* also noted, however, that the Supreme Court had not yet explicitly spoken on this issue. *Id.*

In *Gibson*, the Supreme Court did state that "administrative proceedings looking toward revocation of a license to practice medicine may in proper circumstances command the respect due court proceedings." 411 U.S. at 576–577, 93 S.Ct. at 1696–1697. Unlike *Simopoulos*, however, the present case does not involve state proceedings for revocation of a license to practice medicine, 644 F.2d at 322, and thus, the initial predicate for applying *Gibson* is absent. Assuming *arguendo*, however, that *Gibson* could be interpreted as requiring that *Younger* be applied in circumstances such as the present, this Court notes that the within case, like *Gibson*, presents issues regarding whether the tribunal involved is incompetent, by virtue of bias, to determine the issues before it. 411 U.S. at 577, 93 S.Ct. at 1697. Defendants have maintained that because there are no allegations of bias in the Complaint, consideration of that factor is inappropriate. However,

such bias is alleged in the documents filed in connection with Plaintiff's Request for a Temporary Restraining Order, and a notation of alleged bias was made in the Temporary Restraining Order granted by this Court. Therefore, there would appear to be scant justification for refusing to consider the possibility of bias. Consequently, in this case, as in *Gibson*, the predicate for a *Younger* dismissal is lacking, even if the Court could apply *Younger*.

As a final matter in this context, the Court notes Defendants' contention that abstention is required because Plaintiff may obtain *de novo* review before the City of Dayton Civil Service Board, as well as before the Ohio Courts pursuant to Chapter 2506 of the Ohio Revised Code. To the extent that this argument relies on the adequacy of state remedies, the Court believes it is precluded under *Northwood Apartments*, 649 F.2d 401, 406 (6th Cir. 1981). Moreover, insofar as Defendants have argued that the possibility of *de novo* review would dissipate the effect of any bias, that point would appear to be answered by the Supreme Court's comment in *Gibson* that, where incompetence by virtue of bias is involved, abstention would not be required "simply because judicial review, *de novo* or otherwise, would be forthcoming at the conclusion of the administrative proceedings." 411 U.S. at 577, 93 S.Ct. at 1697 (citation omitted).

■ Abstention under *Pullman, supra,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), has been interpreted by the Sixth Circuit as appropriate in " 'cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.' " *Hanna v. Toner, supra,* 630 F.2d 442, 445 (6th Cir. 1980), cert. denied 450 U.S. 919 (1981), quoting from *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). The within case, which has been initiated pursuant to 42 U.S.C. § 1983, appears to primarily involve the question of whether the City of Dayton Residency Rule has been administered in such a manner as to constitute a denial of equal protection. Since that claim does not involve consideration of any state law issues, there is no means by which a state law determination may moot the necessity for consideration of the federal constitutional issues herein. Therefore, the Court sees no reason to abstain under the *Pullman* doctrine. Having concluded that this Court is not precluded from consideration of this case under federal abstention principles, or by Plaintiff's failure to exhaust potential administrative remedies, the Court will next address the alleged procedural irregularities which have been raised by Defendants.[7]

## II. THE DEFENDANTS' MOTION TO DISMISS THE PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION

Defendants have argued that no motion for a preliminary injunction has been made by Plaintiff, as required by Fed.R.Civ.P. 7(b)(1), which provides that:

> An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought.

7. The remaining contentions in Defendants' Motion and Memorandum (Doc. # 21) pertain to the Preliminary Injunction requested by

On November 18, 1981, Plaintiff filed a Verified Complaint with the Court, in which he requested in ¶ 41(B), that the Court grant a preliminary order enjoining Defendants from dismissing him from employment. On November 19, 1981, Plaintiff filed a Memorandum, affidavits, and exhibits in Support of the Preliminary Injunction sought in this action. (Doc. ¶ 2). On November 24, 1981, Plaintiff filed a Motion for Temporary Restraining Order, wherein he incorporated the previous materials which had been filed. (Doc. # 14). On November 25, 1981, an oral hearing was held at which time Defendants appeared briefly, without waiving any objections either to the Court's jurisdiction, or with regard to procedural defects or irregularities. During that hearing, counsel for Defendants objected to the fact that the documents filed in support of a different proceeding (i.e., the request for a preliminary injunction), were being used to support Plaintiff's Request for a Temporary Restraining Order. After the Temporary Restraining Order was granted, the Court filed an entry on November 30, 1981, setting forth certain procedures leading up to the oral hearing on Plaintiff's Request for a Preliminary Injunction, which was to have been held on December 14, 1981.

■ The Court notes that Doc. # 2, insofar as it refers to, and incorporates the request for preliminary injunctive relief contained in the Complaint, is sufficient in form to be treated as a motion under Fed.R. Civ.P. 7(b)(1). *See: Bumpus v. Uniroyal Tire Co., Division of Uniroyal, Inc.,* 392 F.Supp. 1405, 1406 (E.D.Pa.1975) (holding post-trial letter sufficient to constitute a motion under Rule 7). Thus, the Court finds that Plaintiff has complied with the requirements of Rule 7, as it applies to his request for injunctive relief. While the Court by no means intends to encourage, or countenance, haphazard compliance with pleading requirements, there is no basis for refusing to entertain Plaintiff's request for a preliminary injunction, particularly when

Plaintiff, and will be discussed when a ruling is made on that request.

**144**

the Defendants were aware at all times that a Preliminary Injunction had been requested, and that a hearing on said request would be forthcoming. Therefore, the Court concludes that since an appropriate request for a Preliminary Injunction was made by Plaintiff, within the meaning of Fed.R.Civ.P. 7(b)(1), Defendant's Motion to Dismiss the Request for a Preliminary Injunction must be, and hereby is, denied.

## III.  PROCEDURAL IRREGULARITIES

■ Defendants have first protested the fact that the copies of the Complaint, which were attempted to be served upon various Defendants, have not been signed by an attorney admitted to this Court, as required by S.D.Ohio R. 3.01 and S.D.Ohio R. 3.02. While this may be true of the copies sent to Defendants, the Court notes that the original Complaint, filed with the Court, is signed by Dwight Brannon, an attorney admitted to practice in this Court. Thus, it appears that the pleading filed with the Court is in compliance with the local rules of court, and accordingly, Defendants' Request to Strike the Complaint is denied.

## IV.  DEFENDANTS' MOTION TO STRIKE CERTAIN DOCUMENTS FROM FILE

■ Defendants' final contention is that an illegally procured document, which was apparently released without the permission of Police Chief O'Conner, should be stricken from the file, and that Plaintiff should not be permitted to make any use of such document. An examination of this document reveals that it is a letter from a Lieutenant Waymire to Grover O'Conner, detailing certain findings which were made in the course of an investigation of Plaintiff's residency status. However, any decision on the potential use, authentication, or relevance of this document would be premature at this time, since the document has not yet been properly placed before the Court in the context of an evidentiary hearing. The Court does not recognize, *within the context of civil litigation*, what would be tantamount to a suppression of evidence based solely upon the manner or means by which an attorney procures certain items of documentary evidence. Therefore, the Court will reserve a ruling on the permissible use of this document until such time as its admissibility becomes relevant.

## V.  CONCLUSION

Based on the foregoing analysis, the Court finds that:

1. Defendants' Motion to Dismiss the Complaint on the basis of *res judicata* is granted with respect to the following portions of the Complaint:

a) ¶ 20;

b) That portion of ¶ 25 which refers to the *enactment* (as opposed to enforcement) of the Residency Rule;

c) The Fourth Cause of Action, i.e., ¶ 28 and ¶ 29;

d) The Fifth Cause of Action, i.e., ¶ 30 and ¶ 31;

2. Defendants' Motion to Dismiss the remaining portions of the Complaint is denied;

3. Defendants' Motion to Dismiss the Plaintiff's Request for a Preliminary Injunction is denied;

4. Defendants' Motion to Strike certain documents from the file is denied;

5. A ruling on Defendants' Motion to Strike the September 22, 1981, report from Lieutenant Waymire to Grover O'Conner is reserved until such time as Plaintiff attempts to admit that document into evidence.