Arthur L. **TRAMEL** et al., Plaintiffs-Appellants,

v.

George **SCHRADER** et al., Defendants-Appellees.

No. 74–1096.

United States Court of Appeals, Fifth Circuit.

Jan. 6, 1975.

---

John F. Jordan, F. Burns Vick, Jr., Edward B. Cloutman, III, Robert A. Bernstein, Dallas, Tex., for plaintiffs-appellants.

N. Alex Bickley, City Atty., T. Alex Eastus, Carroll R. Graham, Mary Leigh Bartlett, Dallas, Tex., for Schrader and others.

John L. Hill, Atty. Gen., Scott Garrison, Houghton Brownlee, Jr., Asst. Attys. Gen., Austin, Tex., for State of Texas.

Before RIVES, WISDOM and COLEMAN, Circuit Judges.

COLEMAN, Circuit Judge.

This is a suit to enjoin the collection of special street improvements assessments by city officials. Plaintiffs (Arthur L. Tramel, et al.) are citizens of Dallas, Texas. They own land which abuts streets being improved by the City of Dallas. Defendants (George Schrader, et al.) are the Dallas City officials who ordered the streets improved and who levied the assessments against plaintiffs' property to help pay the cost of the improvements.

Plaintiffs contend that in two respects the assessments violate their federal constitutional rights.[1]  First,

1. Federal jurisdiction is based upon 28 U.S. C. § 1343(3) which provides a federal forum:

"To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, priv-

Texas law provides for no pre-assessment hearing, thus, they say that the assessments constitute a taking of property without due process of law. Second, Texas law [2] allows city governments, but not county governments, to charge to abutting property owners the cost of street improvements; hence, city property owners are being denied equal protection of the law.

The City Order which mandated the assessments is under attack. In addition, the Texas statute which empowers municipalities to order such assessments is under attack. Thus, this suit seeks to restrain the action of city officials and to declare invalid both a state statute and a municipal order made pursuant to that statute.

The District Court denied the request for the convention of a three judge court, demanded by plaintiffs. It dismissed the action for failure to state a claim upon which relief could be granted.

We affirm.

## I. WAS THE DISTRICT COURT CORRECT AS TO THE NECESSITY FOR A THREE JUDGE COURT?

The Three Judge Court Act, 28 U.S.C. § 2281, provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute *by restraining the action of any officer of such State* in the enforcement or execution of such statute or of an order made by an administra-

tive board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title." [Emphasis supplied.]

The literal language of this statute requires the convention of a three judge court only when the defendants are *state officers*. It applies only when plaintiff seeks an injunction "restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such [s]tate".

The Supreme Court has held that the language of this statute is to be literally followed. A three judge court is required only when state officers are defendants; a three judge court is not required where an action is brought against local officers who are enforcing a local ordinance.

A decision directly in point is Ex parte Collins, 277 U.S. 565, 48 S.Ct. 585, 72 L.Ed. 990 (1928). In that case, an Arizona statute provided that municipalities could finance improvements by issuing bonds to be paid off by taxing owners of property abutting the improvements. The City of Phoenix, pursuant to the statute, assessed plaintiff's property to pay for certain improvements. Plaintiff brought suit against Phoenix city officials. A district judge refused to request the convention of a three judge court. Plaintiff petitioned

ilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

The law authorizing this action is 42 U.S.C. § 1983 which provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action

at law, suit in equity, or other proper proceeding for redress."

The decision in Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972) settled the longstanding debate on whether one can use 28 U.S.C. § 1343(3) as the basis of jurisdiction when only property rights are at stake. That case rejected the "distinction between personal liberties and proprietary rights as a guide to the contours of § 1343(3) jurisdiction". Accordingly, federal jurisdiction may exist even if only property rights are involved.

2. Vernon's Ann.Civ.St. art. 1105b, § 1.

the Supreme Court for leave to file a writ of mandamus directing the district judge to appoint two additional judges to sit with him. The Supreme Court held the district judge's refusal to convene the three judge court was correct since only the enforcement of municipal action by municipal officials was involved.

"This suit is not one to restrain 'the enforcement, operation, or execution' of a statute of a state within the meaning of section 266. That section was intended to embrace a limited class of cases of special importance and requiring special treatment in the interest of the public. The lower courts have held with substantial unanimity that the section does not govern all suits in which it is sought to restrain the enforcement of legislative action, but only those in which the object of the suit is to restrain the enforcement of a statute of general application or the order of a state board of commission. Thus, the section has long been held inapplicable to suits seeking to enjoin the execution of municipal ordinances, or the orders of a city board. And likewise it has been held that the section does not apply where, as here, although the constitutionality of a statute is challenged, the defendants are local officers and the suit involves matters of interest only to the particular municipality or district involved. Despite the generality of the language, we think the section must be so construed.

"Congress realized that, in requiring the presence of three judges, of whom one must be a Justice of this court or a Circuit Judge, it was imposing a severe burden upon the federal courts. The burden was imposed because Congress deemed it unseemly that a single District Judge should have power to suspend legislation enacted by a state. That the section was intended to apply only to cases of general importance is shown by the provision that notice of the hearing must be given to the Governor and the

Attorney General—a precaution which would scarcely be deemed necessary in a suit of interest only to a single locality. Support for that view is found also in the provision for a stay of the suit in case there shall have been brought in a court of the state a suit to enforce the statute or order. That the provisions of section 266 applied to cases of unusual gravity was recognized by Congress in 1925, when, in limiting the right of direct appeal from the District Court to this court, it carefully preserved that right in cases falling within the section. Cases like the present are not of that character. If the temporary injunction had been issued, the result would have been merely to delay a municipal improvement. Though here the alleged unconstitutionality rests in the enabling statute, the case does not differ substantially from one where the sole claim is that a city ordinance is invalid. Moreover, the enabling act is not itself being enforced within the meaning of section 266. That act merely authorizes further legislative action to be taken by the city, as by the resolution here in question. It is that municipal action, not the statute of a state, whose 'enforcement, operation, or execution' the petitioner seeks to enjoin." 48 S.Ct. at 585–586.

Ex parte Collins was followed in Petition of Public Nat. Bank of New York, 278 U.S. 101, 49 S.Ct. 43, 73 L.Ed. 202 (1928). New York City assessed taxes against a bank. The assessment was authorized by a New York statute which provided for a higher rate of tax on banks than on other businesses. Plaintiff bank brought a suit in federal court against city officials, asking that they be enjoined from levying the allegedly unconstitutional tax. A three judge court was convened; but dissolved itself, saying it had no jurisdiction. On mandamus, the Supreme Court held the three judge court was correct in dissolving itself. The Three Judge Court Act, the Court said, does not apply when de-

fendants are city officials who are collecting taxes only for the use of the city.

The persons sued are municipal officers, having no state functions to perform, but charged only with the duty of collecting and receiving taxes assessed by other city officials in no respect for the use of the state but for and in behalf of the city alone. In effect, the contention for petitioner practically comes to this—that the general purpose of section 266 being to safeguard state legislation assailed as unconstitutional from the improvident action of federal courts, the words, "by restraining the action of any officer of such state in the enforcement . . . of such statute" are without significance. In other words, we are asked to ignore the quoted words and read the section as though they were not there.

But we are not at liberty thus to deny effect to a part of a statute. No rule of statutory construction has been more definitely stated or more often repeated than the cardinal rule that "significance and effect shall, if possible, be accorded to every word. As early as in Bacon's Abridgment, § 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant'." Washington Market Co. v. Hoffman, 101 U.S. 112, 115, 25 L.Ed. 782. We are unable to perceive any ground for departing from the rule in the case before us. It follows that, giving effect to the phrase in question, section 266 requires the concurrence of two things in order to give the three-judge court jurisdiction: (1) The suit must seek to have a state statute declared unconstitutional, or that in effect; and (2)

it must seek to restrain the action of an officer of the state in the enforcement of such statute. See Henrietta Mills Co. v. Rutherford County (D.C.) 26 F.(2d) 799, 800; Connor v. Board of Com'rs of Logan County, Ohio (D. C.) 12 F.(2d) 789, 790; Connecting Gas Co. v. Imes (D.C.), 11 F.2d 191, 194, 195. The second requisite here is lacking. 49 S.Ct. at 44.

▇ The *Collins* and *Public National Bank* cases [3] conclusively demonstrate that the District Court acted properly in refusing to request a three judge court.[4] No such court is required when an action is brought only against local officials who are enforcing municipal orders.

## II. WAS THE DISTRICT COURT CORRECT IN DISMISSING PLAINTIFFS' ACTION FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF COULD BE GRANTED?

28 U.S.C. § 1341 provides:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

Remedies in the Texas state courts are adequate.[5]

Plaintiffs argue that the Tax Injunction Statute is inapplicable because a special assessment is not a "tax". There is case authority to support plaintiffs' position. Some courts have defined "tax" as including only those levies made to raise revenue for general governmental purposes, thereby excluding special assessments which are made for some specific purpose such as street

---

3. Although the *Collins* and *Public Nat. Bank* cases were heard on mandamus to the Supreme Court, it is now established that the Court of Appeals does have jurisdiction to "review the actions of a one-judge district court in dismissing a complaint instead of taking appropriate steps to convene a three judge court", Hargrave v. McKinney, 5 Cir., 1969, 413 F.2d 300, 323.

4. The District Judge acted on his belief that the complaint failed to state a substantial federal question. If the District Court was correct, its judgment stands, regardless of reasons erroneously assigned.

5. City of Houston v. Standard Triumph Motor Co., 5 Cir., 1965, 347 F.2d 194.

improvements.[6] See, e. g., City of Wichita Falls v. Williams, 26 S.W.2d 910 (Texas, 1930); and the comprehensive list of cases in Words and Phrases, "Tax; Taxation".

Other courts have defined "tax" more broadly, indicating that the term embraces any extraction of property from a private person by a sovereign for its use, People ex rel. Du Page County v. Smith, 21 Ill.2d 572, 173 N.E.2d 485 (1961) and comprehensive list of cases in Words and Phrases, "Tax; Taxation". Under this broad definition, special assessments are taxes, and one District Court has so held when considering the issue in the context of the Tax Injunction Statute; Chicago, St. P. M. & O. Ry. Co. v. City of Randolph, et al., 122 F.Supp. 302 (Nebraska, 1954).

In this posture, we examine Congressional intent when it enacted 28 U.S.C., Section 1341.[7]

The purpose of Congress in enacting the Tax Injunction Statute has been explained by Judge Rives in Hargrave v. McKinney, 5 Cir., 1969, 413 F.2d 320:

There is a twofold purpose underlying Section 1341. First, it is directed at the elimination of unjust discrimination between citizens of the State and foreign corporations. As the Senate Judiciary Committee said in its report recommending adoption:

"If those to whom the federal courts are open may secure injunctive relief against the collection of taxes, the highly unfair picture is presented of the citizen of the State being required to pay first and then litigate, while those privileged to sue in the federal courts need only pay what they choose and withhold the balance during the period of litigation."

And, second, it is directed at eliminating the practice whereby foreign corporations could disrupt State financing efforts. The Senate Report said that the system then in vogue:

". . . makes it possible for foreign corporations doing business in such States to withhold from them and their governmental subdivisions taxes in such vast amounts and for such long periods of time as to seriously disrupt State and county finances. The pressing needs of these States for this tax money is so great that in many instances they have been compelled to compromise these suits, as a result of which substantial portions of the tax have been lost to the States without a judicial examination into the real merits of the controversy."

413 F.2d at 325–326.

**6.** Occasionally, courts have said the essential difference between an assessment and tax is that assessments are made for the improvement of property in a local area whereas taxes are made for the support of the government in general. E. g., New Orleans v. Warner, 175 U.S. 120, 20 S.Ct. 44, 44 L.Ed. 96 (1899).

This definition, like the one stated in the body of the opinion, emphasizes the difference in use to be made of government revenue.

**7.** In their brief, plaintiffs cite numerous cases [e. g., City of Wichita Falls v. Williams, 119 Tex. 163 26 S.W.2d 910, 911 (1930); Payne v. City of Perryton, 48 S.W.2d 497 (Tex.Civ.App. Amarillo, 1932)] in which Texas courts have said that special assessments are not taxes. These decisions deal only with the meaning of the term "taxes" in the context of Texas statutes and the Texas Constitution. They are not controlling in determining what Congress meant by the term "taxes" when it prohibited federal courts from interfering in the collection of taxes. The proper question is not what the Texas courts have said the Texas legislature meant when it used the term but what Congress meant when it used the term.

In any event, the Texas state decisions cited by plaintiffs hardly indicate that Texas courts, given a question like the present one, would stamp its approval on the proposition that federal courts, despite the Tax Injunction Statute, are free to intervene in local governmental assessments. The Texas decisions interpreted the meaning of "taxes" in a context wholly different from the present inquiry, which is whether this assessment is within the evils Congress meant to prohibit through the Tax Injunction Statute.

**1316**

In other words, in passing the Tax Injunction Statute, Congress took aim at two evils.

First, Congress noted that some foreign corporations were in the habit of delaying the payment of taxes through an action in federal court since they could invoke diversity jurisdiction. State citizens, on the other hand, could not obtain a federal forum based on diversity jurisdiction. By passing the Tax Injunction Statute, Congress sought to treat the two classes, foreign corporations and resident citizens, alike.

Second, Congress noted that allowance of injunction suits in the federal courts inevitably resulted in delays in the collection of public revenues by the state and local governments. Because of pressing need for the money, the state and local governments often had to compromise the claims, taking less than what was, in fact, due. By closing the federal courthouse door to taxpayer claims, Congress sought to end this burdensome disruption of local financing.

All that remains is a determination of whether closing the federal judicial forum in this case would fulfill these dual purposes of the Tax Injunction Statute.

Turning first to the Congressional purpose of equating the foreign citizens with resident citizens, we find that for purposes of the federal statute the narrow "tax" definition suggested by plaintiffs does not fit the frame. If the special assessments here are not a "tax", foreign citizens in diversity cases will be able to sue in federal courts to enjoin collection of special assessments, whereas resident citizens would have the benefit of no equivalent privilege. Equal treatment of the two classes would be frustrated.

On the other hand, if the federal statute was intended to include special assessments, as we are confident that it was, all taxpayers stand on an equal footing. They have the plain and adequate remedies available in the state courts.

Considering the second Congressional purpose—the desire to end the use of the federal courts to disrupt the collection of local revenues—the narrow definition proposed by the plaintiffs would be altogether inappropriate. Turning their backs on available state remedies, unwilling taxpayers who do not wish to pay for special assessment improvements, levied under state law and collectible accordingly, would be allowed to delay or otherwise frustrate the revenue collection process by resorting to the federal courts. We are certain that the Congress intended that the federal courts should not thereafter be used for this purpose.

We conclude that the suit should have been dismissed under the terms of 28 U.S.C., Section 1341 and, upon that ground, the judgment of the District Court is

Affirmed.