**HOME BUILDERS ASSOCIATION OF MISSISSIPPI, et al., Plaintiffs,**

v.

**CITY OF MADISON, MISSISSIPPI, et al., Defendants.**

**Civil Action No. 3:95–cv–803WS.**

United States District Court, S.D. Mississippi, Jackson Division.

March 31, 1997.

Joel W. Howell, III, Jackson, MS, Steven H. Smith, Taylor, Covington & Smith, Jackson, MS, for Home Builders Association of Mississippi, Inc., Mark S. Jordan, Good Earth Development, Inc., Mark S. Jordan, Inc., Highland Ridge Partners, L.P., SMCDC, Inc., Post Oak Place, Locust Lane Partners, L.P., William J. Shanks, WJS & Associates, Inc., South Madison County Development Co., Thomas M. Harkins, Sr., Thomas M. Harkins, Jr., North Place Development, Inc., First Mark Homes, Inc., Thomas M. Harkins, Builder, Inc., THV, Inc., J.F.P. & Co., Inc., J. Parker Sartain, Habitat, Inc., J.P.S. Building Supplies, Inc., Sartain Associates, Inc., Douglas Place Partnerships.

Terry R. Levy, Paul V. Ott, Daniel, Coker, Horton & Bell, Jackson, MS, for City of Madison, Mississippi, Mary Hawkins, Timothy L. Johnson, Lisa Clingan–Smith.

Charles Greg Copeland, William Matthew Vines, Copeland, Cook, Taylor & Bush, Jackson, MS, Paul V. Ott, Daniel, Coker, Horton & Bell, Jackson, MS, for Tommy E. Butler, Charles L. Dunn, Griffin C. Weaver.

### *MEMORANDUM OPINION AND ORDER OF DISMISSAL*

WINGATE, District Judge.

Before the court is the motion of the defendants to dismiss the above-styled and numbered cause for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)[1] of the Federal Rules of Civil Procedure. The plaintiffs' complaint, filed pursuant to Title 28 U.S.C. §§ 2201;[2] Title 28 U.S.C. § 2202;[3] and Title 42 U.S.C. § 1983,[4] seeks declarato-

---

1. Rule 12(b)(1), Federal Rules of Civil Procedure, provides:

    (b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, . . . .

2. Title 28 U.S.C. § 2201 provides in pertinent part:

    (a) In a case of actual controversy within its jurisdiction, . . ., any court of the United States,

upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

3. Title 28 U.S.C. § 2202 provides:

    Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

4. Title 42 U.S.C. § 1983 provides in pertinent part:

ry relief, injunctive relief, an accounting, and monetary damages relating to the City of Madison's policy of collecting "impact fees" only from developers of single-family and multi-family dwellings within the City of Madison to be used for improvements to streets, to fire and police departments, and to parks. According to the plaintiffs, the selective imposition of these impact fees only upon developers of residential dwellings, plus the mismanagement and improper expenditure of the proceeds, comprise an unauthorized and unconstitutional ordinance. Jurisdiction, say plaintiffs, is predicated upon Title 28 U.S.C. § 1331 [5] (federal question) and Title 28 U.S.C. § 1343 [6] (action to remedy deprivation of a constitutional right). Defendants respond that, pursuant to Title 28 U.S.C. § 1341, referred to as the "Tax Injunction Act", this court lacks subject matter jurisdiction over this dispute because the instant municipal ordinance is not merely an assessment but a tax and, as the Tax Injunction Act provides, "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." Thus, say defendants, inasmuch as the plaintiffs may seek a remedy under Mississippi Law, their complaint must be dismissed. This court, having considered the arguments and briefs of the parties on the matter of subject matter jurisdiction, finds that the Tax Injunction Act applies to the instant case and deprives this court of subject matter jurisdiction over this dispute for the reasons which follow.

### FACTS

On March 4, 1986, the Mayor and Board of Aldermen of the City of Madison, facing rapidly growing residential development within the City's area of incorporation, adopted a "Public Improvements Plan" (hereinafter the "Plan") which had been prepared by the Local Planning Branch of the Mississippi Research and Development Center. The purpose of the "Plan" was to schedule orderly development of public facilities and physical improvements relating to the building of single-family and multi-family dwellings within the City of Madison for a period of six years.[7] Additionally, on March 4, 1986, the City of Madison enacted an ordinance establishing the City of Madison Development Impact Fee Account for Capital Improvements (hereinafter "impact fees" or the "ordinance") to be paid by the developers of single-family and multi-family dwellings (see "Exhibit A" attached to the plaintiffs' complaint). According to the provisions of this ordinance, impact fees are paid as a condition precedent to obtaining a building permit. The prospective developer pays $175.00 per residential lot (per residential dwelling in the case of multi-family housing) upon filing a preliminary plat for the proposed subdivision with the City of Madison. Once the developer's proposed plat has been accepted by the City of Madison, the developer must pay an additional $525.00 per residential lot, or per residential dwelling, for the building permit.[8]

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

5. Title 28 U.S.C. § 1331 provides that, "[t]he district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States."

6. Title 28 U.S.C. § 1343(a)(3) provides that, "[t]he district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: (3) To redress the deprivation, under color of any State law, stat-

ute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

7. This Plan was readopted after the original six-years Plan expired in 1991. However, only the originally adopted Plan is before this court.

8. Thus, according to the provisions of the ordinance, if there were ten lots in a proposed subdivision, the developer would be obligated first to submit a preliminary plat of the proposed project to the City of Madison for approval, plus $1750.00 ($175.00 × 10 lots). Thereafter, once the preliminary plat was approved by the City of Madison, the developer would have to pay an additional $5250 .00 ($525.00 × 10 lots) in order

In their motion to dismiss, defendants say that from March 4, 1986, to September 30, 1994, the City of Madison collected impact fees in the amount of $1,600,000.00 from residential developers and expended $1,250,-000.00 of those funds.[9] The collection and expenditure of these impact fees by the City of Madison under the putative authority of an impact fee ordinance forms the basis of the instant dispute.

On November 1, 1995, over nine years after the City of Madison enacted and began enforcing its impact fee ordinance, the plaintiffs filed the instant lawsuit in this court seeking a permanent injunction, an accounting, equitable relief and damages, claiming that the impact fees collected by the City of Madison had been converted into an "unrestricted municipal slush fund." According to the plaintiffs' complaint, the ordinance provided that impact fees were to be used to fund the aforesaid "Plan" for improvements in order to provide for the health, safety and public welfare of the citizens of the City of Madison. However, in their complaint, the plaintiffs assert that there is no connection between the City of Madison's use of impact fees and any benefits accruing to any new development. At paragraphs 50 and 51 of the complaint, the plaintiffs assert that, despite being designated for improvement of the City of Madison's police and fire departments, parks, and streets, substantial amounts of impact fees were deposited into the City of Madison's general fund, commingled with other City revenues, and spent on various City improvement projects not necessarily connected to the aforesaid improvement "Plan." Furthermore, at paragraph 55 of the complaint, the plaintiffs contend that the City of Madison's impact fee ordinance is deficient in numerous ways, to include: no method for determining the amount of the fee; no connection between the fee paid by the developer and the developer's specific project; no requirement for timely expenditure; no tie to the actual cost of public facilities required by the development; no

requirement measuring the actual burden a new development may create; and no requirement that the impact fees be earmarked for any specific purpose. In summary, the remainder of the plaintiffs' complaint asserts that the imposition of impact fees and the alleged mismanagement of these funds by the City of Madison violate the plaintiffs' rights to substantive and procedural due process under the United States Constitution; comprise an unconstitutional taking without just compensation; and transgress the plaintiffs' rights to equal protection. The plaintiffs also assert that the imposition of impact fees by the City of Madison constitutes an unauthorized and unconstitutional tax under State law.

On December 15, 1995, this court denied the plaintiffs' request for injunctive relief, finding that they had failed to show irreparable harm; that their remedy could be a refund of the impact fees collected, plus interest; and that the City of Madison had agreed to cease transferring impact fees into the City's general fund, thereby meeting the primary object of the plaintiffs' request for injunctive relief. At that time, the defendants informed the court that they intended to file motions to dismiss based upon immunity, standing, statute of limitations, and lack of subject matter jurisdiction. Those motions subsequently were filed and are now before the court. This court first addresses the defendants' motion to dismiss for lack of subject matter jurisdiction.

### THE IMPACT FEE ORDINANCE

On March 4, 1986, the City of Madison enacted a Development Impact Fee Ordinance establishing the City of Madison Development Impact Fee Account for Capital Improvements (hereinafter "impact fee ordinance" or the "ordinance") to be paid by developers of single-family and multi-family dwellings. The preamble of the ordinance provides that the City of Madison's purpose for imposing impact fees was to "plan com-

---

to obtain the required building permit. The developer of a 10–unit apartment (multi-family dwelling) would pay the same amount of impact fees.

9. See "Exhibit 13" attached to the defendants' motion to dismiss or strike the plaintiffs' motion for a preliminary injunction—a CPA's report to the Mayor and Board of Aldermen of the City of Madison.

prehensively for future growth and development within the City, including the providing of municipal services and facilities for its current and future residents...." The preamble further states that "the increase in residential development within the City will have a significant adverse impact on Madison's ability to continue providing essential municipal services and facilities...." The ordinance calls for adoption of a "Public Improvements Plan" (hereinafter the "PIP") which already had been developed and prepared for the City of Madison by the Local Planning Branch of the Mississippi Research and Development Center in Jackson, Mississippi. The PIP provides that the "funds collected and deposited in [a] ... special trust account shall be used for street improvements, fire department improvements, police department improvements, and parks and recreation improvements...."

The ordinance further provides that developers must pay impact fees as a condition precedent to obtaining a building permit. The prospective developer is required to pay to the City of Madison $175 .00 per residential lot (per residential dwelling in the case of multi-family housing) upon filing a preliminary plat for the subdivision proposed for development. Once the developer's proposed plat has been accepted by the City of Madison, the developer must pay an additional $525.00 per residential lot, or per residential dwelling, for the building permit.[10]

Finally, the ordinance provides that its purpose is to implement and fund the PIP "and to otherwise further the protection and promotion of public health, safety and welfare of the City of Madison and its citizens and to regulate the effects of rapid residential development by insuring adequate public facilities and services to present and future residents of the City." The ordinance concludes with references to Miss.Code Ann. § 21–17–1 (Supp.1982) [11] and Miss.Code Ann. § 21–17–5 (Supp.1985) (see footnote 4) as the statutory authorities for adopting the City of Madison's Development Impact Fee Ordinance. The ordinance requires no dedication of any portion of a developer's property for public use.

## THE TAX INJUNCTION ACT

Title 28 U.S.C. § 1341 (the "Tax Injunction Act") provides that, "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." If, say defendants, the City of Madison's impact fees only raise revenue and do not regulate any particular activity, then, the impact fees are a tax for the purposes of the Tax Injunction Act. According to the defendants, the plaintiffs have a forum in the courts of the State of Mississippi within which to raise their grievances regarding the City of Madison's imposition of impact fees. Plaintiffs respond that the City of Madison's impact fees do not constitute a tax for the purposes of § 1341. Instead, say plaintiffs, the impact fee ordinance is merely a regulatory fee which is not subject to the jurisdictional restriction of § 1341.

### A. *The Applicable Law*

■ The United States Supreme Court has explained its general position regarding

10. Thus, according to the provisions of the ordinance, if there were ten lots in a proposed subdivision, the developer would be obligated first to submit a preliminary plat of the proposed project to the City of Madison for approval, plus $1750.00 ($175.00 × 10 lots). Thereafter, once the preliminary plat was approved by the City of Madison, the developer would have to pay an additional $5250 .00 ($525.00 × 10 lots) in order to obtain the required building permit. The developer of a 10–unit apartment (multi-family dwelling) would pay the same amount of impact fees.

11. Miss.Code Ann. § 21–17–1 provides in pertinent part that, "[e]very municipality of this state shall be a municipal corporation and shall have power to ... purchase and hold personal property for all proper municipal purposes; to acquire equipment and machinery by lease-purchase agreement and to pay interest thereon, if contracted, when needed for proper municipal purposes";...

\* \* \* \* \* \*

The powers conferred by this section shall be in addition and supplemental to the powers conferred by any other law, and nothing contained in this section shall be construed to prohibit, or to prescribe conditions concerning, any practice or practices authorized under any other law.

28 U.S.C. § 1341, stating that, "if injunctive relief from state taxes were available, 'state tax administration might be thrown into disarray,' and '[d]uring the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency. Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts.'" *See Rosewell v. LaSalle National Bank,* 450 U.S. 503, 527, 101 S.Ct. 1221, 1236, 67 L.Ed.2d 464 (1981) (quoting *Perez v. Ledesma,* 401 U.S. 82, 128 n. 17, 91 S.Ct. 674, 699 n. 17, 27 L.Ed.2d 701 (1971)). Thus, the initial determination of this court must be whether the impact fee ordinance imposes a tax for the purposes of the Tax Injunction Act. *See Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County, Minnesota,* 922 F.Supp. 1396 (D.Minn.1996). The federal court need not defer to any label given the assessment by State or local law. The City of Madison may call the assessment a fee for purposes of State law, but the State law label has no bearing on this court's determination. *See Robinson Protective Alarm Co. v. City of Philadelphia,* 581 F.2d 371, 374 (3d Cir.1978) (the meaning of the word "tax" was a matter of federal law deduced from congressional policy underlying the statute, rather than from state tax labels developed in an entirely unrelated legal context). *See also Wright v. McClain,* 835 F.2d 143, 144 (6th Cir.1987); *Carpenter v. Shaw,* 280 U.S. 363, 367–68, 50 S.Ct. 121, 122–23, 74 L.Ed. 478 (1930); *Tramel v. Schrader,* 505 F.2d 1310, 1314–16 (5th Cir.1975).

██ In determining whether an ordinance is a tax, the district court is required to look toward the purpose underlying the ordinance. If the ordinance is found to be primarily a revenue-raising measure, then it would be considered a tax. On the other hand, if the purpose of the ordinance is primarily regulatory or punitive in nature, it would not be considered a tax. *See American Petrofina Co. of Texas v. Nance,* 859 F.2d 840, 841 (10th Cir.1988) (holding that "the mere fact that a statute raises revenue does not imprint upon it the characteristics of a law by which the taxing power is exercised"). Then, if this court finds that impact fees constitute a tax under state law, it next must determine if the plaintiffs have a "plain, speedy and efficient" remedy under state law. *California v. Grace Brethren Church,* 457 U.S. 393, 411, 102 S.Ct. 2498, 2509, 73 L.Ed.2d 93 (1982).

## B. *Distinction Between Tax and Regulatory Fee*

In the related cases of *National Cable Television Association v. U.S.,* 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974), and *FPC v. New England Power Co.,* 415 U.S. 345, 94 S.Ct. 1151, 39 L.Ed.2d 383 (1974), the United States Supreme Court, distinguishing between a fee imposed by the Federal Communications Commission and a tax levied by Congress, stated as follows:

> **Taxation** is a legislative function and Congress, which is the sole organ for levying taxes, may act arbitrarily and disregard benefits bestowed by the Government on a taxpayer and go solely on ability to pay, based on property or income. A **fee,** however, is incident to a voluntary act, e.g., a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station. The public agency performing those services normally may exact a fee for a grant which, presumably, bestows a benefit on the applicant, not shared by other members of society.

94 S.Ct. at 1149. Thus, from the definitions offered by the Supreme Court in *National Cable,* a tax generally is a creature of legislation, while fees are usually imposed by a governmental agency as payment for a particular benefit or privilege.

The First Circuit in *San Juan Cellular Telephone Company v. Public Service Commission of Puerto Rico,* 967 F.2d 683 (1st Cir.1992), dealt with the question of whether an assessment was a fee or a tax in the context of the Tax Injunction Act. The Court dealt with a 3% charge levied against a private cellular telephone firm by the Puerto Rico Public Service Commission, a state gov-

ernment agency, which the private firm's government-owned competitor did not have to pay. The First Circuit canvassed authorities in several jurisdictions regarding the matter of what distinguishes a tax from a fee, stating that

> "[c]ourts have had to distinguish 'taxes' from regulatory 'fees' in a variety of statutory contexts. Yet, in doing so, they have analyzed the legal issues in similar ways. They have sketched a spectrum with a paradigmatic tax at one end and a paradigmatic fee at the other. The classic **'tax'** is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community. *See, e.g., National Cable Television Ass'n. v. United States,* 415 U.S. 336, 340–41, 94 S.Ct. 1146, 1148–49, 39 L.Ed.2d 370 (1974) [hereinafter *National Cable* ]; *Robinson Protective Alarm Co. v. City of Philadelphia,* 581 F.2d 371, 376 (3d Cir.1978); *Butler,* 767 F.Supp. at 19. The classic **'regulatory fee'** is imposed by an agency upon those subject to its regulation. *See New England Power Co. v. U.S. Nuclear Regulatory Commission,* 683 F.2d 12, 14 (1st Cir.1982). It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive. *See, e.g., South Carolina ex rel. Tindal· v. Block,* 717 F.2d 874, 887 (4th Cir.1983), *cert. denied,* 465 U.S. 1080, 104 S.Ct. 1444, 79 L.Ed.2d 764 (1984). Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency's regulation-related expenses. *See, e.g., Union Pacific Railroad Co. v. Public Utility Commission,* 899 F.2d 854, 856 (9th Cir.1990); *In re Justices,* 695 F.2d at 27; *see also National Cable,* 415 U.S. at 343–44, 94 S.Ct. at 1150–51."

967 F.2d at 685.

The First Circuit also noted that some "[c]ourts facing cases that lie near the middle of this (tax or fee) spectrum have tended (sometimes with minor differences reflecting the different statutes at issue) to emphasize the revenue's ultimate use, asking whether it provides a general benefit to the public, of a sort often financed by a general tax, or whether it provides more narrow benefits to regulated companies or defrays the agency's costs of regulation."

The First Circuit concluded that the district court was correct to proceed with the case rather than apply § 1341 because the money collected was not used for a general purpose but rather to defray the expenses generated in specialized investigations and studies, for the hiring of professional and expert services and the acquisition of the equipment needed for these investigations and studies. These circumstances, said the First Circuit, placed the 3% charge closer to the "fee" end of the spectrum.

### C. Cases Holding an Assessment to be a Tax

In *Rendon v. State of Florida,* 930 F.Supp. 601 (S.D.Fla.1996), the district court, determining whether a parking surcharge for disabled drivers was a tax or fee for the purposes of the Tax Injunction Act, stated that if the surcharge was a revenue-raising mechanism, then it would deemed a tax; if it was assessed for regulatory or. punitive reasons, then it would constitute a fee, citing *Travelers Insurance Co. v. Cuomo,* 14 F.3d 708, 713 (2d Cir.1993), *cert. granted, New York State Conference of Blue Cross & Blue Shield v. Travelers Ins. Co.,* 513 U.S. 920, 115 S.Ct. 305, 130 L.Ed.2d 217 (1994), and *rev'd on other grounds,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); *Miami Herald Pub. Co. v. City of Hallandale,* 734 F.2d 666, 670 (11th Cir.1984), *clarified,* 742 F.2d 590 (11th Cir.1984). The district court concluded that the parking fee was a tax because one of its purposes was to raise revenue for programs aimed at assisting the disabled.

Many cases hold that assessments which are imposed primarily for revenue-raising purposes are "taxes," while levies assessed for specific regulatory or punitive purposes, even though they may also raise revenues, are generally not "taxes."· *See American Petrofina Co. v. Nance,* 859 F.2d 840, 841 (10th Cir.1988); *Wright v. McClain,* 835 F.2d 143, 144–45 (6th Cir.1987); *Miami Herald Publishing Co. v. City of Hallandale,* 734 F.2d 666, 670 (11th Cir.1984); *Schneider Transport, Inc. v. Cattanach,* 657 F.2d 128,

132 (7th Cir.1981), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982); *Mobil Oil Corp. v. Tully,* 639 F.2d 912, 918 (2d Cir.), *cert. denied,* 452 U.S. 967, 101 S.Ct. 3123, 69 L.Ed.2d 981 (1981); *Robinson Protective Alarm Co.,* 581 F.2d 371, 376 (3rd Cir.1978); *Tramel v. Schrader,* 505 F.2d 1310, 1314–15 (5th Cir.1975).

In *Butler v. State of Maine,* 767 F.Supp. 17 (D.Maine 1991), the district court, canvassing the foregoing cases for consensus on what constitutes a tax, concluded that a $300.00 non-refundable jury fee imposed on state court litigants constituted a "tax" for the purposes of the Tax Injunction Act because the funds were funneled into the State's general fund rather than earmarked for defraying the cost of jury trials.

However, in *Tramel v. Schrader,* 505 F.2d 1310 (5th Cir.1975), the Fifth Circuit, considering whether a special street improvements assessment imposed only upon businesses abutting a specific street was a tax or a regulatory fee, held that even a fund specially earmarked for the specific purpose of paying for street improvements was a tax for the purposes of the Tax Injunction Act. The Court relied in part upon the broader definition of a tax as any "extraction by a sovereign" from a private person for its use. *Id.,* at 1315. The Fifth Circuit concluded that the special street assessment was a tax for the purposes of the Tax Injunction Act because to hold otherwise meant that "unwilling taxpayers who do not wish to pay for special assessment improvements, levied under state law and collected accordingly, would be allowed to delay or otherwise frustrate the revenue collection process by resorting to the federal courts." *Id.,* at 1316. This, said the Fifth Circuit, would defeat the intent of Congress in enacting the Tax Injunction Act by permitting the use of the

federal courts to disrupt the collection of local revenues. *Id.,* citing *Hargrave v. McKinney,* 413 F.2d 320, 325 (5th Cir.1969), and Judge Rives' reference to the legislative history of Title 28 U.S.C. § 1341 found at S.Rep. No. 1035, 75th Cong. 1st Sess. 1–2 (1937).[12]

This court has considered authority from other Circuits and found the tax holdings to be compatible with the holding of the Fifth Circuit in *Tramel.* For instance, the Second Circuit called a city-assessed public utility "franchise fee" a "tax" because the money raised was treated as part of the city's "general revenue." *See Keleher v. New England Tel. & Tel. Co.,* 947 F.2d 547, 549 (2d Cir. 1991). And, the Third Circuit held that a charge of 5% of gross revenues that a city assessed fire and burglar alarm companies was a "tax" for reasons similar to those stated in *Keleher. See Robinson Protective Alarm Co.,* 581 F.2d at 376.

In *Wright v. McClain,* 835 F.2d 143 (6th Cir.1987), a parolee brought a § 1983 action against Tennessee challenging the constitutionality of statutes which required parolees to make monthly payments to their supervision fund and to victim's compensation fund. The district court dismissed the action under the Tax Injunction Act and parolee appealed. The Sixth Circuit affirmed, holding that these assessments constituted a "tax under state law," and parolee's action was precluded by Tax Injunction Act. The assessment's primary purpose was to raise funds, not to regulate activity.

In *Schneider Transport, Inc. v. Cattanach,* 657 F.2d 128, 132 (7th Cir.1981), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982), the Seventh Circuit called a Wisconsin Department of Transportation charge upon trucks a "tax," because the charge was

---

**12.** Judge Rives noted that the specific congressional policy considerations which underlie § 1341 are to eliminate unjust discrimination between citizens of the States and foreign corporations; and, second, (§ 1341) is directed at eliminating the practice whereby foreign corporations could disrupt State financing efforts. *Tramel,* at 1315, citing *Hargrave,* at 325.

Additionally, the Congressional Record indicates two more reasons behind the enactment of § 1341. Firstly, Congress was concerned with

the added expense of litigating in federal courts that might make it financially unsound for state or local taxing authorities to contest a wealthy corporation's tax liability. *See Aluminum Co. of America,* 522 F.2d 1120, 1123–24 (6th Cir.1975), citing 81 Cong.Rec. 1416–17 (1937). Secondly, Congress wanted to relieve the congestion in the federal courts by letting state courts settle what were viewed as essentially state controversies. *Id.*

used to help pay for highway construction, a "general" type of public expenditure.[13]

### D. Cases Finding an Assessment to be a Fee

On the other hand, there are cases finding an assessment to be a fee. These cases involve assessments that are earmarked for the funding of specific administrative functions. For instance, in 1884, the United States Supreme Court wrote that a statutory levy on shipowners of $.50 per passenger was not a tax because the revenue was used " 'to defray the expense of regulating immigration ... for the care of immigrants ... and for the general purposes and expense of carrying the [immigration] act into effect.' " *See Head Money Cases,* 112 U.S. 580, 590, 5 S.Ct. 247, 249, 28 L.Ed. 798 (1884) (quoting 22 Stat. 214).

Additionally, the Fourth Circuit found that a levy on milk sales which, in greater part, funded a milk price-support program was a regulatory fee. *South Carolina ex rel. Tindal v. Block,* 717 F.2d 874, 887 (4th Cir.1983), *cert. denied,* 465 U.S. 1080, 104 S.Ct. 1444, 79 L.Ed.2d 764 (1984). More recently, the Ninth Circuit held that a Public Utilities Commission's assessment was a "fee," not a "tax," because it helped "defray the cost of performing the regulatory duties imposed" on the Commission. *Union Pacific Railroad Co. v. Public Utility Commission,* 899 F.2d 854, 856 (9th Cir.1990). Even the Fifth Circuit has held that a Nuclear Regulatory Commission's charge was a "fee," not a tax, when it helped to pay the costs of "environmental reviews," "uncontested hearings," and "administrative and technical support" for licensing procedures. *Mississippi Power & Light Co. v. U.S. Nuclear Regulatory Commission,* 601 F.2d 223, 228, 231–32 (5th Cir. 1979), *cert. denied,* 444 U.S. 1102, 100 S.Ct. 1066, 62 L.Ed.2d 787 (1980). Finally, in the recent case of *Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County, Minnesota,* 922 F.Supp. 1396 (D.Minn.1996), the Court found that the primary feature of the ordinance in question was to regulate the flow of waste originating in Hennepin County, not to raise revenue. Thus, the assessment was found to be a regulatory fee, not a tax.

### E. Madison's Impact Fees— Tax or Regulatory Fee?

■ The answer to this question depends on the language of the City of Madison's ordinance and the City of Madison's use of the impact fees. The ordinance says that impact fees will be "used for street improvements, police department improvements, fire department improvements, and parks and recreation improvements as outlined in the PIP (the Plan)." The plaintiffs contend that there is no proof that the impact fee fund is being applied for these purposes. One of the arguments offered by the plaintiffs against dismissal under the Tax Injunction Act is that the impact fee fund is being deposited into the City of Madison's general fund rather than being applied directly to the costs of improving police and fire departments, streets and parks. According to the plaintiffs' argument, the impact fees clearly are being used for general revenue purposes. However, it appears to this court that, for the purposes of the Tax Injunction Act, the impact fees would fit comfortably within the definition of a tax for § 1341 purposes since they are being used for general revenue purposes rather than specific regulatory purposes.

Another argument offered by the plaintiffs is that there is no direct connection between any of the real estate developments paying the impact fees and any improvements being made by the City of Madison. This argument also supports the conclusion that the impact fees constitute a tax since, according to the plaintiffs, they apparently are not being expended for any administrative purpose related to the regulation of residential development in the City of Madison.

Finally, plaintiffs contend that impact fees must be viewed as regulatory in nature be-

---

**13.** Of course, the Seventh Circuit commented that such a charge was a "fee," not a "tax," when the revenues raised by that particular charge helped pay for efforts to "identify authorized vehicles for regulatory purposes."

*Schneider Transport,* 657 F.2d at 132 (citing *Wisconsin v. Yellow Freight System, Inc.,* 96 Wis.2d 484, 292 N.W.2d 361 (1980), *aff'd,* 101 Wis.2d 142, 303 N.W.2d 834 (1981)).

cause the impact fee ordinance specifically and narrowly provides the purposes for which impact fees should be spent. All these purposes, say plaintiffs, (improvement of police and fire departments, streets and parks) pertain to the regulation of residential development in the City of Madison. Thus, say plaintiffs, the impact fees in question are regulatory fees for the purposes of § 1341, not taxes.

This court is not persuaded by the plaintiffs' view of the matter. In *Tramel v. Schrader*, 505 F.2d 1310 (5th Cir.1975), the Fifth Circuit reviewed a special street assessment imposed for the specific purpose of paying for street improvements. The assessment was imposed only upon citizens of the City of Dallas, Texas whose property abutted the streets being improved. The Fifth Circuit concluded that the assessment was a tax because it was "an extraction of property from a private person by a sovereign for its use."

Considering the broad view of the street assessment taken by the Fifth Circuit, this court is compelled to conclude that the City of Madison's impact fee ordinance is a tax imposed to offset the cost of providing street improvements and other city facilities to newly developed residential areas within its area of incorporation. Furthermore, when the Fifth Circuit has concluded that an assessment was a regulatory fee rather than a tax, it has done so based upon the finding that the assessment was being used to help pay the costs of specific administrative and regulatory functions such as "environmental reviews," "uncontested hearings," and "administrative and technical support" for licensing procedures. *Mississippi Power & Light Co. v. U.S. Nuclear Regulatory Commission*, 601 F.2d 223, 228, 231–32 (5th Cir. 1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1066, 62 L.Ed.2d 787 (1980). There is no showing in the instant case that the City of Madison's impact fees are being used to support administrative or regulatory functions. Furthermore, the impact fee ordinance specifically says that impact fees are to be used for improvements to police and fire departments, streets, and parks—areas of expenditure ordinarily funded by the general revenue of any city.

Therefore, in light of the foregoing authority, this court concludes that the impact fee ordinance of the City of Madison imposes a tax for the purposes of the Tax Injunction Act. It remains for this court to determine whether the plaintiffs may contest this tax under state law which provides the plaintiffs a "plain, speedy and efficient" remedy.

### F. *Adequate Remedy Under State Law*

■ The Supreme Court has held that the "plain, speedy and efficient" requirement under the Tax Injunction Act mandates that any State law remedy meet certain minimum procedural requirements. *California v. Grace Brethren Church*, 457 U.S. 393, 411, 102 S.Ct. 2498, 2509, 73 L.Ed.2d 93 (1982) (citing *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 512, 101 S.Ct. 1221, 1233, 67 L.Ed.2d 464 (1981)). Specifically, the remedy must provide the taxpayer with a full hearing and judicial determination in which the taxpayer may raise any and all constitutional objections to the tax. *Id.* This court finds that Mississippi provides its taxpayers with a "plain, speedy and efficient remedy" for challenging a state tax.

The Mississippi Chancery Courts have jurisdiction to hear challenges to any state tax. Mississippi Code Annotated § 11–13–11, Mississippi's restraint of collection of taxes statute, provides that "[t]he chancery court shall have jurisdiction of suits by one or more taxpayers in any county, city, town, or village, to restrain the collection of any taxes levied or attempted to be collected without authority of law." Thus, Mississippi's taxpayers have the right to enjoin the collection of any tax "levied or attempted to be collected without authority of law." *See Fondren v. State Tax Commission*, 350 So.2d 1329, 1333 (Miss.1977) (taxpayer sued pursuant to statute to enjoin state tax commission from approving county recapitulation of assessment rolls until the state tax commission complied with its statutory and constitutional duty to equalize assessments among counties). Additionally, the Mississippi Supreme Court has held that "where there is a void assessment, or where the law is unconstitutional, a taxpayer may seek relief in the (Mississippi)

courts in the first instance." *Davis v. Barr,* 250 Miss. 54, 157 So.2d 505, 510 (1963). Appellate review of the Chancery Court's decision is available to the aggrieved taxpayer pursuant to Miss.Code Ann. § 11–51–3 which provides that "[a]n appeal may be taken to the Supreme Court from any final judgment of a circuit or chancery court in a civil case, not being a judgment by default, by any of the parties or legal representatives of such parties; and in no case shall such appeal be held to vacate the judgment or decree." Rule 16(a) [14] of Mississippi's Rules of Appellate Procedure is the predicate for the Mississippi Supreme Court's jurisdiction over all appeals. Finally, the plaintiffs may seek a final review of this matter by the United States Supreme Court if they are aggrieved by the decision of the Mississippi Supreme Court. *Fair Assessment in Real Estate Association v. McNary,* 454 U.S. 100, 116, 102 S.Ct. 177, 186, 70 L.Ed.2d 271 (1981). Therefore, this court concludes that the "plain, speedy and efficient remedy" referred to in the Tax Injunction Act has been provided for in the Mississippi statutes.

### G. *The Matter Of Comity*

█ Not only does this court lack subject matter jurisdiction over this dispute pursuant to Title 28 U.S.C. § 1341, but also there are principles of comity present in the instant case which prohibit a federal court from restraining the collection of state taxes. Such comity considerations bar declaratory as well as injunctive relief, even where the constitutionality of the tax is at issue. *See California v. Grace Brethren Church,* 102 S.Ct. at 2509; *Todd v. Johnson,* at 1307–08. In *Great Lakes Dredge and Dock Company v. Huffman,* 319 U.S. 293, 300–01, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943), the United States Supreme Court stated that

> "[t]he considerations which persuaded federal courts of equity not to grant relief against an allegedly unlawful state tax, and which led to the enactment of the (Tax Injunction Act) of August 21, 1937, are persuasive that relief by way of declarato-

ry judgment may likewise be withheld in the sound discretion of the court. With due regard to these considerations, it is the court's duty to withhold such relief when, as in the present case, it appears that the state legislature had provided that on payment of·any challenged tax to the appropriate state officer, the taxpayer may maintain a suit to recover it back. In such a suit he may assert his federal rights and secure a review of them by this court. This affords an adequate remedy to the taxpayer, and at the same time leaves undisturbed the state's administration of its taxes."

63 S.Ct. at 1074.

Thus, inasmuch as Mississippi's statutes provide that the Chancery Court is the proper forum for the plaintiffs to challenge the authority and constitutionality of the City of Madison's impact fee ordinance on the grounds that it imposes an unconstitutional tax, this court must refrain from considering the issue of whether the tax is unconstitutional as a matter of comity.

### CONCLUSION

Therefore, this court finds that the ordinance in question imposes a tax as opposed to a regulatory fee; and that inasmuch as Title 28 U.S.C. § 1341 provides that this court shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State, this court finds that it lacks subject matter jurisdiction over the question of whether the ordinance imposes an unconstitutional tax. Accordingly, this lawsuit is hereby dismissed without prejudice. This court shall enter a judgment in accordance with Rule 58 of the Federal Rules of Civil Procedure.

---

14. Rule 16(a) of the Mississippi's Rules of Appellate Procedure provides that "[t]he Supreme Court shall have jurisdiction as is provided by Constitution and statute. All appeals from final orders of trial courts shall be filed in the Supreme Court and the Supreme Court shall assign cases, as appropriate, to the Court of Appeals."